## WALTER MILLER v. THE STATE.

*No. 909.    Decided April 22nd, 1896.*

**1.  Jury Law—Challenges to Jurors.**

It is the duty of a defendant, or his counsel, to keep account of the number of challenges to jurors made by him, and he cannot be heard to complain that, as to this matter, he was misled by the clerk. That a juror is a brother of the deputy sheriff of the county is no ground for a challenge to the juror.

**2.  Murder—Examination of a Witness as to the Reputation of Deceased.**

Where defendant, on a murder trial, asked a witness: "If he knew the general reputation of the deceased for peace and quietude in the community in which he lived?" and witness answered: "That deceased was a good sort of fellow;" and, upon being further examined, it was ascertained that the witness did not know what the words, "peace and quietude," meant. Held: The court properly refused to allow counsel to instruct the witness as to the meaning of those words and thereby indicate to him what testimony was desired of him.

**3.  "The Rule"—Examining Witness who was not Under.**

On a trial where "the rule" has been invoked, the question as to whether a witness shall be allowed to testify, who has remained in the court room and heard some

of the witnesses testify, is a matter largely in the discretion of the trial court, and, when allowed, will not be cause for reversal unless an abuse of discretion is shown.

**4. Charge—Special Instructions.**

When the charge of the court, upon any issue, is sufficient, it is not necessary to give special instructions on that issue.

**5. Impeachment of a Witness—Charge.**

Where H., a witness for defendant, had testified that he was present at the difficulty and heard deceased curse defendant and threaten to kill him; and the State introduced F., a witness, to impeach him, and this witness, F., stated that defendant's witness, H., had told him, he, H., never heard a word spoken by the parties, and the court instructed the jury not to consider the evidence relating to what defendant's witness may have said to F., and others except, only as the credibility and weight to be given to said witness, H. Held: It cannot be percieved how defendant can complain that the court thus limited the testimony of the impeaching witness.

**6. Indictment—Name of Prosecuting Attorney Thereto.**

That the name of the prosecuting attorney, on the indictment, was type-written, instead of being written with pen and ink, constitutes no ground for contention.

**7. Bill of Exceptions.**

A bill of exceptions to the admission of evidence must state the grounds of objection, and should be sufficiently specific, certain and full in its statements as to manifest the supposed error in the rulings of the court, otherwise such ruling will be presumed correct.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

This appeal is from a conviction for murder in the second degree, the punishment being assessed at fifteen years' imprisonment in the penitentiary.

The parties to the homicide were young negro men.

The following statement, taken from the brief of counsel for appellant, is substantially correct:·

On Saturday night, Nov. 1st, 1895, Walter Miller, appellant, was at his neighbor Duff's house attending a dance. During the evening Walter and one Celia Smith became involved in some sort of a dispute, when Walter playfully slapped Celia's cheek. Jim Smith, deceased, the escort of Celia, came up, and inquiring as to the cause of the fuss, was told that Walter had struck Celia, whereupon deceased struck appellant. Appellant did not resent the blow, saying he wanted no trouble with a neighbor boy. There was evidence of threats made by both appellant and deceased that night, after the difficulty, against each other. The next day, Sunday, appellant leaves his home in a wagon with Tom Henley to go to Lisbon after another wagon, and deceased leaves his home and goes to appellant's home. While there, appellant returns, passes by deceased; nothing is said or done. Shortly after, deceased and Henley go down the road in the two wagons, and appellant, coming out of the house about this time, sees them going towards his other brother, Henry's, and takes a near cut through the field to catch them and go on to Anderson Pleasant's, where they were going to play marbles, knowing they would stop to leave one of the wagons at Henry's. When he got there, deceased was in the wagon. Appellant got in the wagon and

spoke to him when deceased began cursing him, threatening to kill him, and finally ran his hand in his bosom and attempted to pull a revolver, when appellant caught him, and, opening his knife with his teeth, began to cut him, deceased struggling to get out his gun, and striking appellant over the head with his other hand, when they fell out of the wagon. Both got up; one ran one way, the other the other way. Deceased finally fell and died. Appellant gave himself up and was indicted for murder, and on December 19th convicted of murder in the second degree and his punishment fixed at fifteen years in the penitentiary. His motion for a new trial being overruled, appellant prosecutes this appeal.

*Bell & Atwell*, for appellant.—The court erred in forcing on appellant the juror Ledbetter. Ledbetter was a brother of a deputy sheriff, and stood in the jury room for murder in the first degree. Appellant's counsel being in error as to number of challenges exhausted was informed by the clerk that there were so many remaining, which would have allowed a peremptory challenge of Ledbetter, and appellant acting thereon did so challenge Ledbetter, when the court informed counsel that all challenges had been exhausted. And it was at this time that counsel inspected the score, and not before, as stated by the court in his explanation of the bill of exception. Wilson v. State, 3 Tex. Crim. App., 64; Holt v. State, 9 Tex. Crim. App., 571; Loggins v. State, 12 Tex. Crim. App., 65.

Defendant introduced one Asia Meyers upon the witness stand, and asked witness if he knew deceased's general reputation in the community in which he lived for peace and quietude. Witness answered that deceased was a good sort of fellow. Defendant then asked witness if he knew what "peace and quietude" meant. He said he did not; whereupon the court refused to allow counsel to explain what said words meant, and to prove by said witness that deceased's reputation, as above stated, was very bad, all of which witness would have testified. Williams v. State, 14 Tex. Crim. App., 102; Moore v. State, 15 Tex. Crim. App., 1.

At the inception of the trial defendant requested the rule. In open defiance of this Jim Garrett remained in the court room and heard many witnesses testify and was then introduced upon the stand. Defendant objected. The court overruled objection and allowed witness to testify; then instructed the jury to pay no attention to his testimony because he was drunk; sent witness to jail and the next day allowed witness, over defendant's objection, to testify, remarking at the same time that he (the court) did not believe what witness heard would influence him. Code Crim. Proc., Art. 729, Moncallo v. State, 12 Tex. Crim. App., 171; Wilson v. State, 17 Tex. Crim. App., 525.

Tom Henley, witness for defendant, testified that he was present and saw the difficulty, heard deceased curse defendant, and say, "God damn you, I am going to kill you," and run his hand in his bosom; that defendant grabbed deceased, they struggled and fought and defendant cut deceased. Will Fletcher testified that Tom Henley told him the evening after the difficulty that he, Henley, never heard a word spoken until the

boys fell out of the wagon. The court charged the jury as follows: "You are instructed that in passing upon defendant's guilt or innocence you will not consider any evidence as to what the witness, Tom Henley, may have said to Will Fletcher or others as to what he saw or heard at the killing, but you may look to such evidence in considering the credibility of said Tom Henley and the weight to be attached to his evidence." Tom Henley was, a negro, Will Fletcher a white man. Henley's sworn testimony was the same at inquest, examining trial and final trial. There is not a syllable in this record which even tends to indicate that Henley made statements to any one but Fletcher. No proof offered by the State that witness, Henley, had made statements to any one but Fletcher. Foster v. State, 8 Tex. Crim. App., 248; Ross v. State, 10 Tex. Crim. App., 455, Jernigan v. State, Id., 546; Conn v. State, 11 Tex. Crim. App., 390, and a host of others.

*Mann Trice,* Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at fifteen years in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal. Appellant complains that he was compelled to take on the jury, one Ledbetter, who was a brother of a deputy sheriff of Dallas County; that he was misled by the clerk as to the number of his challenges, or he would not have taken this juror. It appears that this mistake of the clerk was corrected by the judge some time before the appellant's challenges were exhausted. At any rate, appellant or his counsel should have kept account of the number of challenges, and then they would not have been misled by the clerk. The fact that Ledbetter was a brother of the deputy sheriff would appear to be a lame excuse on which to predicate even a peremptory challenge. Appellant introduced one Asia Myers, to prove the reputation of the deceased as being a quarrelsome and dangerous man. The question was asked of said witness by the appellant, "If he was acquainted with the general reputation of the deceased for peace and quietude in the community in which he lived?" witness answered, "That the deceased was a good sort of fellow." On further questioning by defendant's counsel, he said that he did not know what peace and quietude meant. Counsel then wanted an opportunity to instruct the witness as to the meaning of such words. It is the duty of counsel to ascertain, before they put a witness on the stand, what they can prove by him, and it is too late, after a witness has been introduced, to then undertake to ascertain what he knows; or, if disappointed in his testimony, to then propound leading questions to him, in order to indicate to him what is wanted. In the action of the court in this regard we see no error. Nor was there any error in the court permitting the witness, Jim Garrett, to be sworn as a witness and placed on the stand, although he had remained in the courthouse, and

heard some of the witnesses testify.    This is a matter largely in the discretion of the court, and, unless the bill of exceptions shows some abuse of that discretion, this court will not reverse.    The bill in this case does not show such abuse.    The charge of the court on threats in connection with self-defense, we think was sufficient, and it was not necessary to give the charge asked by the appellant.    The charge of the court on manslaughter, while not called for by the facts in this case, was certainly as liberal towards the defendant as he could ask.    The defendant introduced a witness—Tom Henley—who testified that he was present, and saw the difficulty, heard the deceased curse the defendant, and say, "God damn you!    I am going to kill you," and reached his hand in his bosom, and the defendant grabbed the deceased, and they struggled and fought, and the defendant cut the deceased, etc. .  The State introduced Will Fletcher, for the purpose of impeaching the witness, Henley, and he testified that Henley told him the evening after the difficulty, that he (Henley) never heard a word spoken until the boys fell out of the wagon. The court charged the jury as follows on this subject:    "You are instructed that, in passing upon the defendant's guilt or innocence, you will not consider any evidence as to what the witness, Tom Henley, may have said to Will Fletcher or others, as to what he saw or heard at the killing, but you may look to such evidence in considering the credibility of the said Tom Henley, and the weight to be attached to his evidence." Now, it will be observed that the witness, Fletcher, gave no affirmative evidence as to any statement of anything by Henley, but merely stated that Henley told him that he did not hear what he testified he did hear. The court, in this case, need not have charged as to the purpose of this testimony at all, but we certainly fail to see how the appellant can complain that he did limit the negative testimony of the witness, Fletcher; and the fact that the court may have predicated the instruction, not only as to the contradictory testimony of Fletcher, but as to others, when no other impeaching witness was introduced by the State, we fail to see how such action could have prejudiced the appellant.    There is nothing in the contention that the name of the prosecuting attorney to the indictment was typewritten, and not signed with pen and ink.    By another bill of exceptions it is shown that the State was permitted to preve that "Ed Miller had a pistol on the day and at the time of the killing, when he went down the road from George Miller's house, towards Henry Miller's house, and in allowing counsel for the State to state before the jury that he expected to prove a conspiracy between the defendant and said Ed Miller to kill the deceased."    This was excepted to by the appellant, but no grounds of objection are stated in the bill. This bill is too meager and indefinite to be considered.    Nor is the explanation of the court attached to the bill any more satisfactory, to-wit: that he "permitted this evidence on the promise of the prosecution to show a conspiracy between the defendant and Ed Miller, and stated it should not be considered unless a conspiracy was shown."    These acts of Ed Miller may have been admissible.    If the testimony showed by

circumstances or by positive evidence that the conspiracy existed be-
tween the defendant and Ed Miller, then these acts may have been in
furtherance of the common design. ˙ It will be seen that the bill is too·
indefinite to require consideration.   If this evidence was admissible at
all, it was to prove the main fact, for the act of one co-conspirator in
furtherance of the common design is the act of all the conspirators; and
such evidence does not require a charge limiting its effect.   This is based
upon the further fact, however, that in such state of case the conspiracy
has been shown.   In this connection it will be noted that no objection
was urged, and no facts set out in the bill of exceptions showing the
predicate was not laid which would authorize the introduction of said.
testimony.   The bill should have been sufficiently specific, certain, and
full in its statements to have manifested the supposed erroneous ruling·
of the court; otherwise such ruling will be presumed correct.   Until the
bill comes within the well-settled rules in this regard, this court is not·
authorized to revise the same.   Willson's Crim. Stat., §§ 2368, 2516.
There was no motion made to exclude this evidence on the ground that
the conspiracy was not proved.   Id., § 2514.   As this bill comes before·
us, it is too indefinite to require consideration.   The judgment and sen-
tence of the lower court are affirmed.

*Affirmed.* .

[NOTE.—Appellant's motion for rehearing, filed May 5th, 1896, was·
overruled without a written opinion.—Reporter.]