## WILLIE WILSON V. THE STATE.

### No. 1221. Decided May 31, 1911.

### Rehearing Denied June 23, 1911.

**1.—Assault to Murder—Evidence—Identity of Weapon Used.**

Where, upon trial of assault to murder, it was shown that after exhibiting the razor to the State's witness defendant took the train to the place where he cut the injured party, and thereafter returned to the place where the razor was found by the witness, and there were other circumstances identifying said razor, there was no error in admitting testimony that the witness found the razor next morning after the difficulty.

**2.—Same—Evidence—Withdrawal from Jury.**

Where, upon trial of assault with intent to murder, the court admitted some testimony with reference to a hat belonging to the brother of the party injured, etc., and thereafter withdrew the same by a proper charge, there was no reversible error; besides the bill of exceptions was insufficient.

**3.—Same—Continuance—Attorney.**

Where, upon trial of assault to murder, no exception was reserved to the action of the court in overruling defendant's motion for a continuance on the ground of the absence of his attorney, there was no reversible error.

**4.—Same—Special Charges.**

Where the special charges requested were contained in the court's main charge on self-defense, there was no error in refusing them.

**5.—Same—Newly Discovered Evidence—Want of Diligence.**

Where defendant did not use the proper diligence in securing the alleged newly discovered evidence, and the same would not have resulted in a different verdict, there was no error.

Appeal from the District Court of Gonzales. Tried below before the Hon. M. Kennon.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Romberg & Duncan,* for appellant.——On question of newly dis-
covered evidence: Pate v. State, 54 Texas Crim. Rep., 462, 113 S.
W. Rep., 759; Piper v. State, 57 Texas Crim. Rep., 605, 124 S. W.
Rep., 661.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted, charged with the of-
fense of assault to murder. Upon a trial he was convicted and sen-
tenced to five years confinement in the penitentiary.

1. Appellant in bill of exceptions No. 1 complains that the court
admitted the testimony of D. B. Beck, who testified that the morning
after appellant was charged with cutting Claud Bouldin, he found
a razor closed up in a box near the depot at Harwood. It appears
that appellant had gone on the train from Harwood to Waelder; that
just before taking the train at Harwood he had shown to Bill Jones
a razor in a black box, saying that the people at Waelder had been
running over him, and he was fixed for them. He came back that
night on the train, and the razor found by D. B. Beck near the
depot and near the place where appellant was arrested that night,
was in a box like the box shown Mr. Jones, and he testified that it
had the same kind of handle and looked like the razor shown him
by appellant the day before, just before taking the train at Har-
wood for Waelder, where appellant cut Claud Bouldin with some kind
of a sharp instrument. The objection urged that "the testimony was
irrelevant and prejudicial," was too general, and the court did not
err in admitting the testimony. McGrath v. State, 35 Texas Crim.
Rep., 413; Carter v. State, 37 Texas Crim. Rep., 403; Miller v.
State, 36 Texas Crim. Rep., 47.

2. The only other bill of exceptions in the record complains that
the court erred in admitting the testimony of J. E. Conrad, who
testified that the morning after the difficulty in which appellant cut
Claud Bouldin, he found a hat near the depot which was identified
as that of Guy Bouldin. The objection urged was that the testi-
mony was "irrelevant, prejudicial and tended to connect the defend-
ant with the theft of a hat, which was a different offense from that
for which he was being prosecuted." The testimony in the case
shows that on the night of the difficulty Guy Bouldin lost a hat;
he was informed that a brother of appellant had been seen with the
hat going to the depot. The injured party went to the brother of
appellant and asked him what he had done with the hat of his
brother Guy. From this conversation the difficulty arose. There
is nothing in the record to suggest that anyone ever accused appel-
lant of taking the hat, therefore that part of the objection, that it
"tended to connect defendant with the theft of the hat" is not sug-

gested by the evidence, and the objections that it is "irrelevant and prejudicial" is too general to be considered. In addition to this, it is shown that the court withdrew this testimony, in that he charged the jury at the request of appellant: "The defendant is on trial for the offense charged in the indictment. If there has been any testimony admitted before you tending to show that the defendant or his brother took Bouldin's hat, you are instructed not to consider such testimony on the question of the guilt or innocence of the defendant."

3. There is in the record a motion for a continuance, on the ground that the attorney whom appellant first employed was in jail and unable to attend to the case, and that the attorneys who represented him on the trial had insufficient time. No exception was reserved to the action of the court in overruling this motion, therefore we can not consider it. Trevino v. State, 38 Texas Crim. Rep., 64; Kelly v. State, 36 Texas Crim. Rep., 480; Blackshire v. State, 33 Texas Crim. Rep., 160.

4. There was no error in refusing the special charges requested, as they were in substance incorporated in the charge of the court, and the court's charge on self-defense presented defendant's theory more favorably than did the requested charges.

5. The only other ground in the motion is based on newly discovered evidence. Defendant was indicted on July 8, 1910; the case was not called for trial until January 11, 1911. None of the witnesses, except William Smith, claim to have been present at the time of the difficulty, and this witness does not testify to any fact that would justify appellant in seeking to take the life of Claud Bouldin. Appellant went to trial on the testimony of his brother, and another witness, and did not issue process for any other witnesses. He was present at the dance where the difficulty took place; knew who was present, and if he had used any diligence during the six months elapsing from the time he was arrested until his trial, he could have learned of the circumstances and the names of the witnesses on which he now seeks a new trial. A person can not sit still and wait until he is convicted, and then secure a new trial on isolated circumstances, when he does not show that he sought in some way to develop the facts in his case before trial, when he had ample time. It seems strange that he could not learn of these circumstances for six months prior to this trial, but could discover them within a day or so subsequent to a trial and conviction. Trials are expensive and occupy the time of the court, and one who seeks a new trial on account of newly discovered evidence must show that he used due diligence to prepare his case for trial, and that the evidence claimed to be newly discovered must be such that it would probably result in a different verdict, and that it was through no negligence of his own that he did not discover and present the evidence on his trial. If the evidence alleged to have been newly discovered had been intro-

duced on the trial, we do not think it could or would have resulted in a different verdict being returned by the jury.

The judgment is affirmed.

*Affirmed.*

## ON REHEARING.

### June 23, 1911.

HARPER, JUDGE.—At a former day of this term this case was affirmed, and appellant has filed a motion for a rehearing, insisting that the testimony of the witness Beck, who testified, "I came down to my shop early on the morning of the 18th of June, 1910. On my way to the shop I found a razor, about 250 yards east of the depot in the middle of the road. I turned the razor over to Jeff Tomlinson, the constable, who has since died. The razor here shown me is the razor I found. It had the gap in it, that is shown in it now. When I found it, it was closed up and in the box that it is now in. It had no blood on it. The blade is about four inches long, the handle six inches, and it is a deadly weapon," was inadmissible, because it "was not identified as the instrument with which defendant cut Claud Bouldin." The testimony, we think, was admissible.

The injured party testified: "Defendant cut me with what I took to be a razor."

Guy Bouldin testified: "Defendant jumped .towards my brother and said, 'I will cut your damn head off,' at the same time cutting him twice, with what I took to be a razor. I saw him take something out of his coat pocket which looked like a razor box, and open it, and take out of the box what I took to be a razor, and close the box and put it in his pocket."

Grover Porter testified: "I saw defendant pull something out of his pocket which I took to be a razor, and jump towards Claud Bouldin and cut him twice."

Bill Jones testified: "On the 17th day of June, 1910—I think in the afternoon—the defendant, Willie Wilson, came to my shop. While there he told me he was going to Harwood that night and asked me to go with him. I refused. He said people had been running over him at places, and that if they tried it in Harwood he was fixed for them. He took out a razor box and handed it to me. I opened it and saw a razor. It had a black handle and was in a black box. He told me that if anyone bothered him in Harwood, he would cut the ass off them. The razor shown me now looks like the one Wilson had, except I never saw that big gap in it, and I never saw that white in the handle."

It was shown that after exhibiting the razor to Jones defendant took the train and went to Waelder, where he cut Bouldin. After the difficulty he returned to Harwood and got off the train at the depot near the place where the razor was found by Beck. The circumstances all indicate it was the instrument with which he cut

Bouldin. It was admissible under the evidence in the case as a circumstance to be weighed by the jury.

This being the only ground assigned, the motion for a rehearing is overruled.

*Overruled.*

[Rehearing denied June 23, 1911.—Reporter.]