## Jesus de los Santos v. The State.

### No. 1422.   Decided January 10, 1912.

#### Rehearing Denied March 6, 1912.

**1.—Gaming—Indictment—Knowingly Permitting Premises to be Used—Then and There—Venue—Table.**

Where the indictment alleged that defendant in the county of Webb and State of Texas on or about the 20th day of March, 1911, did then and there knowingly permit premises then and there under his control to be used as a place to bet and wager and gamble with cards, etc., it sufficiently alleged the venue of the offense, and it was not necessary to describe the kind of table or bank. Distinguishing Eylar v. State, 37 Texas Crim. Rep., 257. Davidson, Presiding Judge, dissenting.

**2.—Same—Charge of Court—Subtenant—Knowledge of Defendant.**

Where, upon trial of permitting gambling under defendant's control, the evidence showed that the defendant sublet the alleged premises in which gaming was proved to have taken place, and the court charged the jury that where a person rents the whole of a building and uses a part of it and sublets other parts, he is nevertheless, in the control of the whole building within the meaning of the gaming law, and if such gaming occurred with his knowledge, to find the defendant guilty, there was no error. Davidson, Presiding Judge, dissenting.

**3.—Same—Constitutional Law.**

The Gaming Act punishing persons for permitting gambling on premises under their control is constitutional. Following Parshall v. State, 62 Texas Crim. Rep., 177.

**4.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of unlawfully permitting gambling on premises under defendant's control, the defendant was shown in such juxtaposition to the offense as to exclude any other issue than that of positive testimony, there was no error in the court's failure to charge on circumstantial evidence; besides, the jury were instructed to acquit the defendant, unless they found that he knew

that gambling was going on in the alleged room, the error, if any, was not such as to call for a reversal of the case, under Article 723, Code Criminal Procedure. Davidson, Presiding Judge, dissenting.

**5.—Same—Charge of Court—Practice on Appeal.**

Where the record showed that at the time of acting on the motion for new trial no error was pointed out in the court's charge, the same could not be considered on the general objection of the defendant; besides, the court's charge is sufficient. Davidson, Presiding Judge, dissenting.

**6.—Same—Witness Under the Rule—Discretion of Court.**

Where witnesses are permitted to testify who are not placed under the rule when the rule is demanded, the same is a matter of discretion, and in the absence of abuse shown, there is no error. Besides, the witnesses did not testify.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial of knowingly permitting gambling on the premises under defendant's control, the evidence sustained the conviction, there was no error.

Appeal from the District Court of Webb. Tried below before the Hon. J. F. Mullally.

Appeal from a conviction of knowingly permitting gambling on premises under defendant's control; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*F. G. Dickinson* and *Hicks, Hicks & Teagarden,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted by the grand jury, charged with permitting gambling on premises under his control. The indictment reads as follows:

"The grand jurors for the County of Webb, State aforesaid, duly organized as such, at the April Term, A. D. 1911, of the District Court for said county upon their oaths in said court, present, that Jesus de los Santos in the *Count* and State aforesaid on or about the 20th day of March, A. D. 1911, did then and there knowingly permit premises then and there under his control to be used as a place to bet and wager and to gamble with cards and as a place where people did resort to gamble, bet and wager, and as a place to keep and exhibit for the purpose of gaming a gaming table and bank; and the said Jesus de los Santos knowing that said games prohibited by law were being played on premises under his control did then and there knowingly permit said premises to be used. Against the peace and dignity of the State."

Appellant filed a motion to quash the indictment, alleging that same "failed to allege the kind of gaming alleged to have been exhibited on the premises, and fails to allege the kind of bank alleged to have been exhibited for gaming, and fails to give any description of said alleged gaming table and bank." In the motion for a new

trial it is also alleged that the indictment "fails to allege the venue of the offense."

Presiding Judge Davidson has written an opinion in which he holds the indictment fatally defective, citing the cases of Eylar v. State, 37 Texas Crim. Rep., 257, and Mohan v. State, 42 Texas Crim. Rep., 410. By reading the above indictment and turning to these cases, it will be seen they are not in point. In this indictment, after laying the venue in Webb County, Texas, it is alleged "did then and there knowingly permit premises then and there under his control to be used," etc. No such averments were used in the Eylar case, or the Mohan case, but for the lack of such averments, the indictments were held defective. In the case of Smith v. State, 36 Texas Crim. Rep., 442, this court held, Presiding Judge Davidson rendering the opinion:

"Appellant moved to quash the indictment, on the ground that, after the charge of breaking, in the language introducing the charge as to the intent to commit theft, the phrase 'then and there' was not used. In the indictment the charge of breaking is coupled with the charge as to the intent by the conjunction 'and.' Ordinarily, where the evidence consists of a series of connected acts, it is necessary, instead of repeating the time and place originally alleged, to use the phrase 'then and there.' See Bishop's Crim. Proc., sec. 412. In this case the act was the breaking, and we think that the use of the conjunction 'and,' coupling the intent with the breaking, was sufficient. It makes the indictment plain and intelligible, and sufficiently extends the original allegation of time and place to the succeeding averments in the indictment. See Harris v. State, 2 Texas Crim. App., 102."

And the same learned judge who rendered the opinions in the Mohan and Eylar cases cited, in a later case, Butler v. State, 46 Texas Crim. Rep., 287, says: "Appellant questions the indictment on the ground that in the closing part of the indictment, to wit, the allegation, 'and the said L. A. Butler did unlawfully and fraudulently take, misapply and convert the same to his own use and benefit,' etc., that it fails to show such a connection with what precedes as to embrace a proper allegation of time- and venue. We do not believe this contention is sound. The indictment pursues the ordinary form laid down in White's Annotated Penal Code, section 138, omitting, however, in said clause above referred to the allegation, 'then and there' after the word 'did.' However, the indictment after alleging that he was county treasurer, and said funds being three thousand dollars current money of the United States of America of the value of three thousand dollars, came into his possession by virtue of his said office, and was then and there the property of Ward County, Texas, and the said L. A. Butler did unlawfully as above stated, etc. We think the conjunction 'and' here sufficiently shows the connection, and carries forward with it the allegations 'then and there,' showing

the act of conversion was committed at the time and place before alleged."

In the case of Baker v. State, 25 Texas Crim. App., 1, this court holds: "We are of opinion that the indictment is substantially sufficient in both its counts, and that the defendant's exceptions thereto and his motion in arrest of judgment were properly overruled. The locus in quo of the house burned is alleged sufficiently, the allegation being 'a certain house then and there occupied, owned and controlled by him, the said Baker,' the words 'then and there' referring to the time and county previously stated."

In the case of Slack v. State, 30 Texas, 355, Judge Willie says: "The words 'then and there' as used in an indictment are words of reference, and when time and place have once been named with certainty, it is sufficient to refer to them afterwards by these words, and it will have the same effect as if the time and place were actually repeated." See also Campbell v. State, 43 Texas Crim. Rep., 602, wherein Judge Davidson again renders the opinion. Not only is this the rule in Texas, but in Bishop's New Criminal Procedure, it is stated: "When an indictment has stated one time and one place, whether in one count or more, each repetition thereof may, and in just propriety should, be laid as occurring 'then and there' instead of by the longer form of expression." (Sec. 407) Bouvier's Law Dictionary thus defines the words: "'Then and there'—words of reference, and when the time and place have once been named with certainty, it is sufficient to refer to them afterwards by these words." Hughes Criminal Law, sec. 2726, says: "If the words 'then and there' precede every material allegation (after the time and place have been stated at the beginning of the indictment) it is sufficient." See also Am. & Eng. Ency. of Law, vol. 28, p. 129; Ency. of Plead. and Prac., vol. 10, p. 519; Cyc., vol. 22, p. 321; Words & Phrases, vol. 8, p. 6946. In these references there are numerous cases cited not only from this State, but almost every State in the Union.

In this indictment it is alleged that defendant in the county of Webb and State of Texas on or about the 20th day of March, 1911, did then and there knowingly permit premises then and there under his control to be used as a place to bet and wager and gamble with cards, etc. This sufficiently alleges the venue of the offense, and it was unnecessary to describe the kind of table or bank, but the allegations in the indictment charge an offense under article 388b, title XLIX of the Act of the Thirtieth Legislature, and the court did not err in overruling the motion to quash the indictment.

Neither do we concur in the opinion of the Presiding Judge in holding that the case should be reversed on account of errors in the charge. The charge, taken as a whole, is not subject to the criticisms contained in the opinion. Under the evidence in this case it

is shown that appellant rented a building divided into four rooms. A diagram is as follows:

The gambling took place in the room marked X. The sheriff testified: "I am the sheriff in and for Webb County, Texas. On March 20, 1911, about nine o'clock at night, I went to the saloon situated in the city of Laredo, Webb County, Texas, known as the Cantina Blanca. I had been informed that gambling was going on there. I took the deputy constable, Jacobo Salizar with me. This saloon is on Victoria Street, in a house having four rooms. The two front rooms are of brick or stone and the rear rooms are frame. The saloon is in a corner room, which has a door opening on Victoria Street and a door opening on a side street, one of the avenues. Next to the saloon is another room of the house with a door opening into the saloon. This room was used at the time as a restaurant. To the rear of the restaurant was another room used as a kitchen for the restaurant. On one side of the kitchen was another room of the house with a door opening into the kitchen. When I arrived at the house I went to the rear of it and through cracks in the rear wall I looked into the room on the side of the kitchen and saw some men at a table playing cards. I then went to the front of the house and entered the front door of the restaurant opening on Victoria Street. I passed through the restaurant, entered the kitchen and from the kitchen I passed through a door into the room on the side of the kitchen. In this room I found a number of men gambling. They were around a table upon which was a green cloth and they were playing a game of cards called monte. On the table there was also a box containing several packages of cards. And also on the table was a quantity of money and chips used in gambling. When I entered the room I saw a man with cards in his hands; he was dealing monte and the other men were betting. I told the man with the cards that the outfit was mine. I took possession of the cards, the box, the chips and the money that was on the table, which amounted to about $22 in Mexican money and $30 or $40 in United States currency. There were about ten men in the room when I went in. There is no door between the room where I found the gambling going on and the room where the saloon is located. I do not remember whether or not I saw the defendant at that house that night. I think I saw him there on the outside."

Jacobo Salizar, deputy, testified he went with the sheriff on the night in question, and stopped in the kitchen and saw the defendant come out of the kitchen. He went out of the kitchen towards the saloon room. That he saw the barkeeper carry beer from the saloon to the room where the men were.

Avelino Pena testified he collected the rents on the building, and that defendant had the entire building rented. That he had collected the rent for this building from defendant every month for about a year; that defendant pays for the entire house, and owns the saloon. J. M. Flores, deputy tax collector, testified that defendant was the owner of the saloon and had a license to run a saloon in that building.

Inocente Hyme testified he was barkeeper for defendant, and that defendant had left Laredo about March 1 and gone to his ranch. That before defendant left for the ranch he rented the room in the rear of the saloon to Guillermo Cantu and instructed him to collect the rent. That Cantu occupied the room until about the 20th or 22d of March, and then left. That defendant returned from the ranch about the 13th or 14th, but he had not noticed him around the saloon until the night and after the sheriff had made the arrests. Witness says he did not see any gambling in the house, and did not know gambling was going on there.

Defendant himself testified that he owns a ranch in Webb County of about 885 acres, and also the saloon in question, and employed Inocente Hyme to manage the saloon in order that he could attend to his ranch. He further testified: "The house in Laredo where my barroom is situated has four rooms. I rent this house from Mr. Hamilton. I rent two of the rooms in this house to a man by the name of Epifanio for restaurant purposes. About the 8th day of March, 1911, I rented the other rear room in the house to a man by the name of Cantu. I did not know this man Cantu, but I knew his brother, Jesus Cantu, who brought him to me and asked me to rent the room to him. This man Cantu told me that he wanted to rent the room to use as a barber shop, and I rented it to him for that purpose. After I rented this room to Cantu, I left Laredo and went to my ranch down the river. It was about March 10, 1911, I think, when I left Laredo to go to my ranch. I returned from my ranch to Laredo about March 20 or 21, 1911. I reached Laredo about dusk. My residence is about seven blocks from my saloon. I went to my saloon about nine o'clock that night. I went into the yard in the rear of the saloon to urinate. There is no fence around the yard of the saloon. I then went into my barroom, passing through the kitchen of the restaurant and the restaurant. I do not recollect seeing Sheriff Sanchez in my saloon that night. I never gave anyone permission to gamble or run a gaming table or bank in any part of this house where my saloon is located. I give a saloonkeeper's bond for $1000, and I could not afford to do this. I had no idea that

gaming was going on in that room I rented to Cantu. I would not have permitted gaming there if I had known it, because I am under bond. I did not know that Jesus Cantu, the brother of Guillermo Cantu, was running a monte game at the saloon of Narcisso Alanis. I did not know that Guillermo Cantu or Jesus Cantu were gamblers. I did not investigate whether the room was being used as a barber-shop or not."

The State proved that Guillermo Cantu, the man to whom defendant claimed to have rented the room, had been convicted on a charge of vagrancy in the courts at Laredo, the charge being based on an allegation that he was a common gambler. This, in substance, is the testimony, and by presenting the testimony of the sheriff and the defendant almost in full, the issues in the case are thus shown. The court charged the jury:

"You are instructed that it is provided by law that if any person shall knowingly permit property or premises under his control to be used as a place to bet or wager or to gamble with cards, or to keep or exhibit for the purpose of gaming any table or bank or as a place where people resort to gamble, bet or wager, he shall be guilty of a felony and shall be punished by confinement in the penitentiary not less than two nor more than four years.

"Now, if you believe from the evidence beyond a reasonable doubt that the defendant, Jesus de los Santos, on or about the 20th day of March, 1911, in the county of Webb and State of Texas had under his control the building known as the Cantina Blanca or White Saloon, and that one Guillermo Cantu then and there used a room in said building as a place to bet and wager or to gamble with cards or to keep or exhibit for the purpose of gaming any table or bank, or as a place where people resorted to gamble, bet or wager, and if you further believe from the evidence beyond a reasonable doubt that the defendant knew that said Cantu was so using said room, and permitted said Cantu to so use it, then you will find the defendant guilty as charged in the indictment and assess his punishment at confinement in the penitentiary not less than two nor more than four years.

"You are instructed that where a person rents the whole of a building from the owner and uses a part of it for his own purposes and sublets other parts of it to other persons he is nevertheless in control of the whole building within the meaning of the gaming laws.

"If the defendant sublet or rented a room in the White Saloon building to Guillermo Cantu to be used by said Cantu as a barber-shop and defendant did not know that Cantu was using said room for gaming purposes (if he was so using it), then defendant is not guilty; and in case you have a reasonable doubt as to this issue you must give defendant the benefit of such doubt and acquit him.

"The defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence, beyond a reasonable doubt;

and in case you have a reasonable doubt as to the defendant's guilt you will acquit him, and say by your verdict 'not guilty.'"

It is thus seen in the charge the court required the jury to affirmatively find that defendant knew that said Cantu was so using the room, and then permitted him to so use it before they would be authorized to find him guilty, and further instructed the jury that if he rented the room to Cantu to be used as a barbershop, and did not know that Cantu was using the room for gaming purposes (if he was so using it) to acquit defendant, and if they had a reasonable doubt on this issue to give the defendant the benefit of such doubt and acquit him.

Taking this charge as a whole, we do not think it subject to the criticisms contained in the opinion of the Presiding Judge, but that it fairly, fully and clearly presented the issues in the case, and in a way the jury could not be misled. The jury had to affirmatively find that Cantu was using the room for gaming purposes, first, and, second, that defendant knew he was so using the room, or they would acquit defendant. Inasmuch as defendant had paid and continued to pay the rent on the entire building, and our statutes (Revised Statutes, article 3250), provide that a person renting premises shall not sublet or lease same during the term of the rental contract to any other person without first obtaining consent of the landlord, and in this case no consent was asked or given by the landlord, we think the charge as written was as favorable as the facts called for, especially so taking into consideration that provision of the law which provides that the use of such premises by any tenant for any of the prohibited purposes shall terminate all the rights of the tenant in the premises. If defendant knew, as the charge required he should know before he could be convicted, that the premises were being so used, and he permitted such premises to be so used, he would be guilty under the law. The special charge requested is not the law, and the court did not err in refusing to give same.

This disposes of all the bills of exception in the record, and the other matters are not presented in a way we are authorized to consider same. The constitutionality of this law was passed on in Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W. Rep., 759, and we adhere to the opinion in that case.

The judgment is affirmed.

*Affirmed.*

PRENDERGAST, JUDGE.—I concur.

DAVIDSON, PRESIDING JUDGE (dissenting).—The indictment charges appellant with having permitted gambling to be carried on in the house under his control. The charging part of the indictment is as follows: "In the *Count* and State aforesaid on or about the 20th day of March, A. D. 1911, did then and there knowingly permit premises then and there under his control to be used as a place to

bet and wager and to gamble with cards and as a place where people did resort to gamble, bet and wager, and as a place to keep and exhibit for the purpose of gaming a gaming table and bank; and the said Jesus de los Santos knowing that said games prohibited by law were being played on premises under his control did then and there knowingly permit said premises to be used, against the peace and dignity of the State."

1. Motion was made to quash the indictment, and urged also in motion for new trial, because it fails to set out any offense against the law, and also that it fails to allege the venue of the offense in that it fails to allege that said premises were located or situate in Webb County. An inspection of the indictment verifies this criticism. In order to sustain this indictment as sufficient, the allegation should have been specific that appellant not only permitted the premises under his control to be used for gaming purposes, but that such premises were located in Webb County. This question has been directly adjudicated in Eylar v. State, 37 Texas Crim. Rep., 257, and Mohan v. State, 42 Texas Crim. Rep., 410. Under these authorities this indictment is insufficient to properly charge the offense, and the motion to quash, and motion for new trial should have been sustained. This ought to reverse and dismiss the prosecution.

2. Two other questions ought to reverse this judgment. The court charged the jury as follows: "You are instructed that where a person rents the whole of a building from the owner and uses a part of it for his own purposes and sublets other parts of it to other persons he is nevertheless in control of the whole building within the meaning of the gaming laws." Exception was reserved to this charge principally because it was a charge upon the weight of the evidence as well as an incorrect statement of the law. I suppose the trial court had in mind a statute which prohibits the subletting of premises by a renter to a subtenant without permission of the landlord. Whatever effect that statute may have upon rights in civil cases, and whatever the court might be justified in telling the jury in regard to this phase of the law in a civil cause, I am of opinion under the facts of this case such a charge is not warranted in a criminal cause. It will be noted that in civil matters that question would arise between the parties to a contract, and the landlord might take advantage of it, but the State of Texas is a third party and not interested in that matter and ought not to be allowed to take charge of it as not being a party to the contract. Presumption of innocence, reasonable doubt and criminality in connection with use of the premises for gambling purposes can not arise in civil cause. If appellant rented the house, it was his so far as the rental contract was concerned and might be inhibited by the law from subrenting unless he had permission of his landlord. But the action of the landlord could not make appellant guilty for violating the law under a statute which punishes only where the appellant is prosecuted for *knowingly* violat-

ing the law. His knowledge of the matter that the gaming was going on in the house would not depend upon the contract and matters between the landlord and tenant or between himself and a subtenant. It must be the *knowledge in fact* that gambling was being carried on in the house. This charge would seem to indicate to the jury that the fact that appellant had subrented the house to another party would be taken as a fact against him that he was permitting gambling in the subrented property, and to that extent was a charge upon the weight of evidence. It made appellant guilty for subrenting—not for knowingly permitting gaming in the house. The fact that appellant may have subrented the house to another party could not indicate to the jury that gambling was going on in that part of the house with his permission, simply by reason of that fact. In fact, it might be a circumstance in his favor, because by the subrenting he had placed it in possession and in control of another party, although it might have been an illegal contract under the civil statute. If, as a matter of fact, he transferred the control of the house to another party, it would be under the control of that party whether it was legal or illegal, and if it had passed under the control of the third party to the exclusion of the control of the defendant, it would not be a criminal circumstance against him that he had subrented the property. This charge was erroneous. A brief statement of the evidence bearing directly upon this question may be thus summed up: Appellant had rented a house with four rooms that fronted on two streets, two rooms fronted on one street, and one of those rooms and the room in which the gambling occurred fronted upon another street. In other words, the house was at the intersection of two streets. Appellant occupied the room immediately at the intersection of the streets for a saloon. The room adjoining the saloon and a rear room were occupied by another party to whom appellant had rented the two rooms as a restaurant and kitchen. The other room, which fronted on the side streets, or the other street, appellant rented to another party to be used as a barbershop. This occurred about the 10th of the month. Appellant immediately left town and went to his ranch some miles in the country, and was absent until the night the room was raided and parties found gambling in it. The testimony is little in doubt as to what time he reached his saloon that night. One of the witnesses indicate that he was in the back yard somewhere behind the house attending to a call of nature at the time the sheriff went into the room where the parties were gambling, and arrested them, and just after this he passed into the rear of the house through the kitchen and restaurant into the saloon. The remaining part of the testimony is to the effect that appellant did not reach the saloon or the house where the gambling is said to have occurred until after the arrest of the parties, and they had been all carried away. No witness swears that appellant knew anything about the gambling until after the arrest, and

the evidence all shows that he was not in town or about the place from the time he rented the house to be used as a barbershop until the night on which the gambling is said to have occurred.

This, therefore, brings up the next proposition. The court failed and refused to charge the law of circumstantial evidence. This case was clearly one of circumstantial evidence, and not of a cogent character. The court did not give the jury a charge on the law of circumstantial evidence. This failure and error is of a most material character. In conclusion, referring back to the charge with reference to that portion of the charge of the court in regard to sub-renting the property, and remembering that this is a case of circumstantial evidence, it is easily observed that the charge given by the court might be and doubtless was used by the jury as a cogent fact against appellant charging him with knowledge of whatever might be going on in the house. That charge placed him in control of the house despite the contract by which the other party was placed in control. There would be no question of the fact that if property had been taken from the room which was used by the party as a barbershop, it would be the property of that renter, and ownership would have to be alleged in him as occupant of the house.

The judgment ought to be reversed and the prosecution dismissed. I dissent.

### ON REHEARING.

### March 6, 1912.

HARPER, Judge.—At a former day of this term this case was affirmed, Presiding Judge Davidson dissenting. The decisions in this case are rather disjointed. Presiding Judge Davidson first wrote an opinion reversing and dismissing the case. The writer of this opinion not agreeing with him, wrote an opinion discussing only those questions the presiding judge had discussed in his original opinion, and this opinion became the opinion of a majority of the court. This much is said that the profession may understand the peculiar wording of the opinions. In the motion for a new trial appellant insists that the court erred in holding that the evidence sustained the verdict, and that the trial court erred in not charging on circumstantial evidence. The summary of the evidence is set out in the original opinion, and when we consider that, under our laws, the jury is made the judges of the credibility of the witnesses and the weight to be given the testimony, where there is evidence that would authorize their verdict this court should not disturb it. Appellant in his motion calls our attention that under article 723 of the Code of Criminal Procedure, an error on the part of the trial court in his charge may be challenged and called to the attention of the court in the motion for a new trial. This is admitted to be the law, but in the same article it is also provided that when the attention of the court is called to it by exception, or in the motion for

new trial, *the judgment shall not be reversed* unless the error appearing from the record was calculated to injure the rights of the defendant. This is as much a part of the law as that part called to our attention by appellant, and this court is bound by all the provisions of the law.

Appellant in his motion for new trial complains that the court erred in failing to charge on circumstantial evidence. Admit that the court should have so charged, as to appellant's knowledge that gaming was being carried on in the room, for every other fact is proven by positive testimony, was the failure of the court to so charge *calculated to injure the rights of appellant* when the court instructed the jury, "If the defendant sublet or rented a room in the building to Guillermo Cantu to be used by said Cantu as a barbershop and defendant did not know that Cantu was using said room for gaming purposes (if he was so using it) then defendant is not guilty; and in case you have a reasonable doubt as to this issue you must give the defendant the benefit of such doubt and acquit him." Thus the jury were told in positive terms by the court that if defendant did not know the building was being so used, to acquit appellant. That defendant had the house rented and paid the rent is proven beyond all doubt; that he had a saloon in one room is proven beyond all doubt; that gambling was being carried on in the building in a room adjoining the saloon room is proven beyond all doubt; the only issuable fact, on which a charge on circumstantial evidence would be called for, being, did defendant know the room was being so used? and the court tells the jury if they have any reasonable doubt that defendant knew that fact, they would acquit him. A witness swears that the bartender of defendant was serving beer to those engaged in gambling, consequently the bartender must have known of it, Jacobo Salizar testifying: "I saw the barkeeper enter the room where the men were with a bottle of beer." He also says: "I stopped in the kitchen and could see through the door leading from the kitchen into the room on the side of the kitchen. I saw several men in this room. They appeared to be gambling. On the table in this room I saw money and a box. When I entered the kitchen I saw the defendant. I saw the defendant come out of the kitchen; he went out of the kitchen towards the saloon." In the case of Cabrera v. State, 56 Texas Crim. Rep., 141, this court held: "Where upon a trial for murder the evidence showed that the defendant was in such juxtaposition to the homicide as to exclude any other issue than that of positive testimony, a charge on circumstantial evidence was not required." In that case our presiding judge concurred in that opinion, and if under the evidence in that case a charge on circumstantial evidence was not called for, then, under the facts in this case, where it is shown that appellant was seen coming out of a room (at the time the gambling was going on) that a witness says

the gambling could be seen from, and that while in the room he saw the gambling, it would not be. Appellant in his testimony admits passing through this room, although he denies knowledge of the gambling. In the Cabrera case, supra, the question is discussed at length and authorities of this State are cited, which are here referred to. But, as hereinbefore stated, if it be conceded that a charge on circumstantial evidence should have been given, when all the elements that go to make the offense are proven by positive testimony, except the bringing of knowledge home to defendant, and this proven in the manner stated, and the other circumstances in the case, and the court instructs the jury to acquit him, unless they find he did know that gambling was going on in the room, the error was not such as to call for a reversal of the case, for the law that binds this court is that, unless the error was such as was calculated to injure appellant, the court must not reverse the case. In the case of Wright v. State, 40 Texas Crim. Rep., 45, in writing the opinion, Presiding Judge Davidson says of a charge complained of: "This charge was wrong and should not have been given. . . . Under the recent Act of the Legislature the error in the charge must be calculated to injure the rights of the accused before this court would be authorized to reverse the judgment. And not only must the error be calculated to injure the rights of the defendant, but it must be excepted to at the time of the trial or on motion for new trial. This matter was brought forward in the motion for new trial, but inasmuch as under the peculiar facts of this case, it was not calculated to injure the rights of defendant, we would not be authorized to reverse the judgment." In the case of Lucas v. State, 39 Texas Crim. Rep., 48, our Presiding Judge again held that the court wrongfully instructed the jury, but that the error was not calculated to injure the rights of defendant, and affirmed the case. In Areola v. State, 40 Texas Crim. Rep., 51, he again says that the error therein recited was not such as to authorize a reversal of the case. We could cite other cases decided by this court, but deem it useless, for if we are to follow the law as laid down in Cabrero v. State, supra, it was not necessary for the court to charge on circumstantial evidence, and even if it would have been proper then, under the other decisions cited herein, the error was not such as would authorize a reversal of the case, for the court instructed the jury they must find as a fact that defendant had knowledge of the gambling, or they would acquit him, and failing to instruct them they might find this fact from circumstances in the case, would be immaterial, since they are required to find it as a positive fact before they would be authorized to return a verdict of guilty.

Again in the dissenting opinion, considerable space is devoted to discussing a paragraph in the charge. The only reference in the motion for new trial to this paragraph reads as follows: "Because the court erred in giving the following instruction to the jury, to

wit: 'You are instructed that when a person rents the whole of a building from the owner and uses a part of it for his own purposes, and sublets other parts of it to other persons, he is nevertheless in control of the entire building within the meaning of the gaming law.'" It will be thus seen that at the time of acting on the motion for new trial no error was pointed out in this paragraph of the charge, and no reason stated why this paragraph was not a correct presentation of the law as applicable to the evidence in this case. However, some twenty-seven days subsequent to the adjournment of the court the court approves a bill of exceptions excepting to this paragraph and stating some objections thereto. These were fully discussed in the original opinion, and we do not deem it necessary to again do so, only adding that the theory of appellant that the laws relating to property, its ownership, renting, subletting, etc., because embraced in the civil statutes, have no application to criminal cases, is a new one to us. The law as to property rights are all civil in their name, while a violation of those rights may become a criminal offense, and in arriving at the rights of the parties it is necessary to decide what is the law of the State, and it is the same whether arising in a civil or criminal case. In this case the court required in his charge that appellant had knowledge that gambling was being carried on in the room, or they would acquit him.

Appellant complains that we did not discuss the sixth ground in the motion for new trial, this ground being that the rule was demanded, and all witnesses were placed under the rule. Thereafter the district attorney summoned two members of the grand jury as witnesses; they were not placed under the rule, and were permitted to remain in the courtroom. When one of them was offered as a witness defendant objected to him then being permitted to testify on the ground that he had not been placed under the rule. When the objection was made, the district attorney withdrew the witness and neither of them testified in the case. It has always been held that whether a witness is permitted to testify who is not placed under the rule, when the rule is demanded, is a matter within the discretion of the trial judge, and in the absence of a showing that the discretion had been abused, this court would not consider the matter. In this case as neither of the witnesses testified, certainly no error is shown.

The only other ground presented in the motion for a new trial deals with the facts and insists that the evidence does not support the verdict. We are referred to the case of Brown v. State, 49 Texas Crim. Rep., 419, 93 S. W. Rep., 723. In that case the person renting the building testified and the evidence excluded the idea that Brown knew that gambling was being carried on in the house. No fact or circumstance was testified to that would tend to show that he did have knowledge of such fact. In this case the evidence is wholly different, and appellant is placed in a position where he must have

had knowledge of it. Jacobo Salizar testified that he saw appellant's bartender carry beer in the room where the gambling was going on; he also testified when he got in the kitchen room he could see them gambling. That he saw appellant in this kitchen room *at that time,* and if he and the sheriff could see and hear the gamblers, there is no reason given why appellant could not do so. He is not shown to be either deaf or blind. While appellant testified that he rented the house to Cantu for a barbershop, there is no evidence in the record that he was a barber—the only evidence as to his vocation was that he had been convicted of being a common gambler. The record does not disclose that any barber chair or other supplies of kindred nature were in, or had ever been placed in, the room. All the furniture shown to have been in the room was a table upon which was a green cloth, upon which men were engaged in playing a game of cards called monte; there being several decks of cards in a box on the table. The evidence, while not fully, is yet sufficiently set forth in the original opinion, and under it, if the jury believed the evidence offered on behalf of the State, they would be authorized to return the verdict they did return.

Motion for rehearing is overruled.

*Overruled.*

DAVIDSON, Presiding Judge.—I dissent, and will file reasons.

DAVIDSON, Presiding Judge (dissenting).—Having read the opinion of the majority, I am the more fully convinced that I was right in my heretofore filed dissent. That this is a case of circumstantial evidence, as I understand this record, is not debatable. Judge Harper relies upon the Cabrera case in support of the proposition that this is not a case of circumstantial evidence. An inspection of the Cabrera case will disclose the fact that two witnesses testified to seeing Cabrera shoot into the window where Judge Welch was killed; they were eyewitnesses to the shooting. That made it a case of positive evidence. In this case the evidence shows that the State relied upon circumstances altogether to prove knowledge on the part of defendant that gambling was going on in the room he rented to his subtenant. He was not present in the room, and there is no fact that connects him with knowledge of it except some weak circumstances. The questions are fully presented as required by the strictest construction of article 723 for adjudication. I still adhere to my original dissenting opinion, that the indictment was fatally defective, fails to charge any offense under the authorities which stands harmonious and unbroken in this court.

I do not care to review the case further than I have heretofore discussed it, and make these few additional statements. I adhere to what I have heretofore written.

Believing the judgment ought to be reversed and the prosecution dismissed, I enter this my additional dissent.