### E. J. JONES v. THE STATE.

No. 2854.   Decided January 14, 1914.

**1.—Pandering—General Reputation of House.**

Where defendant was being prosecuted for procuring a place of the alleged female as inmate of a house of prostitution, testimony of the general reputation of said house being that of a house of prostitution was admissible. Following Harkey v. State, 33 Texas Crim. Rep., 100, and other cases.

**2.—Same—Indictment—Venue—Then and There.**

Where the indictment alleged that defendant did, in the county of the prosecution, then and there procure a place, etc., the words related back that the cause was situated in the county of the prosecution. Following De Los Santos v. State, 65 Texas Crim. Rep., 518.

**3.—Same—Former Jeopardy—Bill of Exceptions—Discretion of Court.**

In the absence of a bill of exceptions in granting a motion to strike from the record defendant's plea of former jeopardy, the same can not be considered on appeal; besides, the action of the court in discharging a jury upon a former trial of the case did not show any abuse of discretion.

**4.—Same—Evidence—Acts of Defendant.**

Upon trial of pandering, there was no error in admitting in evidence the acts and conduct of the defendant and his relation with the alleged female; however, her testimony relating to his cursing and abusing her should have been excluded on proper objections.

**5.—Same—Name of Party—Pandering.**

Upon trial of pandering, in the absence of any grounds stated in the bill of exception, there was no error in not permitting the females in question to reveal their real names, they being generally known by their assumed names.

**6.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of pandering, the jury returned and propounded a question to the court whether the words "consent" and "request" were synonymous, an instruction that it was a fact proven that the alleged female made the request for the room obtained for her by defendant was on the weight of the evidence.

**7.—Same—Accomplice—Charge of Court.**

Under the law defining pandering, the female who kept the house of prostitution and the female who was induced to go there by the defendant do not

come within the rule governing accomplice testimony, and there was no error in the court's failure to charge thereon.

**8.—Same—Allusion to Defendant's Failure to Testify—Misconduct of Jury.**

Where, upon appeal from a conviction of pandering, the record showed that the jury in their retirement alluded to defendant's failure to testify, and said that if defendant had anything good in his past record his lawyer would have shown that fact, etc., the same was reversible error.

Appeal from the District Court of Wichita. Tried below before the Hon. P. A. Martin.

Appeal from a conviction of pandering; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Sewall* and *Mathis & Kay,* for appellant.—On question of plea of former jeopardy: Woodward v. State, 58 S. W. Rep., 135; Bland v. State, 59 S. W. Rep., 1119; Usher v. State, 60 S. W. Rep., 555.

On question of refusing defendant's motion requiring State's witnesses to disclose their real names: McCarty v. Insurance Co., 75 S. W. Rep., 934.

On question of accomplice testimony: Williams and Smith v. State, 42 Texas, 392; Wandell v. State, 25 S. W. Rep., 27; Bennett v. U. S., 33 U. S., 289.

On question of defendant's failure to testify: Myers v. State, 55 S. W. Rep., 818; Thorpe v. State, 50 S. W. Rep., 383.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of pandering, in that he procured a place in a house of prostitution for one Lillian Powell, and his punishment assessed at five years confinement in the State penitentiary.

Florence Hughes, in her testimony, admitted that she was running a house of prostitution, and testified: "My name is Florence Hughes; I live at The Brick, in Wichita Falls, Texas. I have seen the defendant, E. J. Jones, several times. Lillian Powell rooms and boards with me; I suppose that Lillian Powell is a woman; she is a prostitute. The first time that I ever saw Lillian Powell was the night that Jones brought her to my house; he phoned to the house and asked if I had a room for a girl, and one of the girls answered the phone and she turned around and asked me, and I said 'yes' and so in about twenty minutes he brought her down and told me he was the party who phoned me for a room for a girl and I gave her a room. Lillian Powell was with him at the time. I gave her a room; she has been in my house ever since. Jones has been there every day or every night until he was arrested. I have seen Jones go upstairs. I never saw him in her room, because I never go upstairs, only to my meals. I have seen Jones talk to Lillian Powell

a great many times. On a couple of occasions I have heard him curse her—she was in my room one night and he came in there and bawled her out and took her upstairs. Another time she was standing at the end of the porch talking to some man who had stopped there and he came up in a machine and called her over. This happened· when she was in my house. He called her to the automobile and cursed her, and asked her if he would never be able to teach her any sense. I never saw Lillian give Jones any money, but she made $92 the first week that she was in my house."

Appellant offered no testimony, but on cross-examination of Florence Hughes and Lillian Powell proved that Lillian Powell paid her own rent for the room, and Florence Powell testified that appellant secured the room for her at Florence Hughes' house of prostitution at her request. The State, before introducing Florence Hughes, proved by George Hawkins and Bob McFall that the residence of Florence Hughes had the general reputation of being a house of prostitution. As appellant was being prosecuted for procuring a place, as inmate of a house of prostitution, for Lillian Powell, this testimony was admissible, and the court did not err in so holding. Harkey v. State, 33 Texas Crim. Rep., 100; Sylvester v. State, 42 Texas, 496; Allen v. State, 15 Texas Crim. App., 320.

Appellant filed a motion to quash·the indictment on ·the· grounds that the indictment did not allege that the house was situate in Wichita County. The indictment, after alleging that in the County of Wichita, State of Texas, appellant did, etc., says, did *then and there* procure a place as inmate for Lillian Powell in a house of prostitution. The words "then and there" related back and alleged that the cause was situate in Wichita County. De Los Santos v. State, 65 Texas Crim. Rep., 518, 146 S. W. Rep., 919.

The other grounds are equally without merit, as the indictment charges the offense in the language of the statute.

Appellant also files a plea of former jeopardy, which, on motion of the State, was stricken from the record. No bill of exceptions was reserved to the action of the court in so doing, consequently the matter is not presented in a way we can review it. But if we take the allegations of the plea, that the trial was completed at 4 o'clock, June 19, and case submitted to the jury; that about 4 o'clock, June 20, the jury reported to the court they could not agree; as appellant was unwilling to discharge them the court refused to do so, and ordered the jury to retire and further consider the case. That thereafter about 6 o'clock the jury again reporting that it was impossible for them to agree, the court without the consent of appellant did discharge them. Every case of this character must be considered in the light of the record of that case. On this trial there were but four witnesses introduced, and in the first trial it is shown that the trial consumed only from 9 o'clock in the morning until 4 o'clock that same day, when the case was submitted to the jury. That they were kept together the remainder of that day, that night and all

the next day. Considering the small amount of evidence introduced, the issue or issues involved, we can not say the court abused his discretion in the premises after they had twice reported they could not agree. Article 759, Code of Criminal Procedure.

The issue in this case was, did appellant procure a place in a house of prostitution for Lillian Powell. She was permitted to testify as to all her relations with appellant. That he was her lover, and was her lover before they went to Wichita Falls. That she had bought and paid for an automobile which appellant took in his name; that she had given him a part of her earnings, mainly as he claimed, to repair the automobile. This testimony was all admitted without objection, but when the State undertook to prove that the night before appellant was arrested he had demanded money of Lillian Powell, and when she refused to give it to him, she applied to Florence Hughes for protection on account of Jones' conduct; that Jones cursed her, etc. Considering the issues in this case, whether or not appellant had procured this place for the woman, the fact that he visited her there each day would certainly be admissible on this issue. As to his conduct on these occasions, showing that he cursed her, if the jury had assessed more than the minimum penalty, we would feel inclined to reverse the case on that account. But as they assessed the minimum penalty, and it is an extremely doubtful question as to whether or not this was so entwined with other legitimate testimony as to render it admissible, it is not such error, if error it be, as to cause a reversal of the case. In addition to this the bills merely state "that objection was made, and the court overruled the objections, to which appellant excepted," no grounds of objection being stated in the bill. Wilkins v. State, 35 Texas Crim. Rep., 525; Carter v. State, 37 Texas Crim. Rep., 403; Miller v. State, 36 Texas Crim. Rep., 47. However, on another trial that part of the testimony relating to him cursing and abusing her should be excluded on proper objection.

The record discloses that Florence Hughes and Lillian Powell were going under those names and generally known by those names, and had been so known for some time. They frankly admitted these names were not their real names, and declined to state what their real names were. The bill shows that "counsel for the State objected, for the following reasons, viz: because same was immaterial and would tend to embarrass innocent families and would embarrass the witnesses, and the court sustained the objections so made by the State and the court refused to require answers to such questions, the defendant excepted to said rulings and herewith tenders his bill of exceptions." No grounds are stated why appellant objected to such ruling, and no reasons stated why appellant desired to know their real names, or in what way such information could be any service to him. The bill is insufficient to bring anything before us for review. We can readily understand why the women did not desire to give their real names, and unless some purpose would be subserved in requiring them to do so, there would not be error in so holding. If, however, the obtaining of their real names could have been of

any useful purpose to the defendant,—enable him to make his defense, or break down the case of the State,—and these reasons had been stated to the court at the time, then the court should have required them to give their real names.  But as no reason is stated in the bill why this information was desired, and it would appear to be only idle curiosity, the court did not err in so ruling.

The next bill shows the jury propounded the following question to the court: "The charge reads: 'With her consent.'  The evidence shows that the room was secured by her request.  We, the jury, want to know if the word consent and request have the same meaning in his case," signed by the foreman of the jury.  The court in writing instructed the jury: "In answer to the above question you are instructed by the court that the question of whether the room secured for the woman in the house of prostitution was with or without her consent, request that it be secured for her is an immaterial question in the case.  If the defendant, knowing the purpose for which it was to be used, secured a place for her in a house of prostitution then the offense would be complete under the law.  It is therefore proper for you to consider her request to go there as meaning the same in law as 'consent to go there.'"

The objection made is that this charge is upon the weight of the testimony.  We think this ground is perhaps well taken.  The concluding sentence: "It is therefore proper for you to consider her request to go there as meaning the same in law as consent to go there," was a virtual instruction by the court to the jury that it was a fact proven by the testimony that she had made the request and appellant obtained the room on such request by her.

Another ground states the court erred in not instructing the jury that Lillian Powell and Florence Hughes were accomplices.  The facts would show that appellant procured the room at the request of Lillian Powell, and Florence Hughes let him have it, knowing the use it would be put to.  Does the statute defining this offense, and stating who are competent witnesses, take these witnesses out of the general rule as to accomplices testimony, as in gambling and other cases?  We think so. Under the law of our State an accomplice can not testify for a co-defendant, while in this law it is specifically provided that the wife of the person accused may testify and the female for whom the accused is alleged to have procured a room in a house of prostitution may "testify for or against the accused."  This clearly evidences the intention of the Legislature not to bring such witnesses within the rule governing accomplice testimony.

This disposes of all the grounds in the motion that need be discussed except the one setting up the misconduct of the jury.  The court heard the testimony and overruled the motion, and we always give great weight to such action on the part of the court.  In this case the testimony is preserved in a bill filed in term time, and the question is properly before us.  J. E. Lowrance testified that in the jury room the fact that defendant had not testified was referred to on more than one occasion.

"The statement was made that if he had gone on the stand and testified that he had ever worked or had a job they would never agree to convict." Mr. Burton testified that the fact that appellant did not testify was referred to in the jury room and admitted he said: "If the man ever had anything good in his past record that I thought Lon Mathis was too good a lawyer not to have shown that fact on this trial, considering that he was facing such character of a charge." All the jurymen placed on the witness stand say that the fact was mentioned in the jury room about appellant not testifying. It is strange that with the positive instructions given by the court that they must not refer to, allude to, nor consider that fact, that jurymen will constantly violate such instruction. While we would not reverse a case for every incidental reference to the matter, when properly suppressed, but we are driven to the conclusion in this case that the matter was carried far beyond that. Article 790 of the Procedure confers the right to testify, but in it is expressly provided that a failure to testify shall not be taken as a circumstance against him. It appears that in the jury room some one said if he had gone on the stand and testified and shown that he had ever worked they would not convict. This evoked the response from Mr. Burton that if appellant had anything good in his past record, Lon Mathis was too good a lawyer not to have shown that fact. We believe under these circumstances a new trial should have been granted, and accordingly the case is reversed and the cause remanded.

*Reversed and remanded.*