George Huddleston v. The State.

No. 2438. Decided April 30, 1913.

**1.—Manslaughter—Indictment—Description of Instrument.**

Where the indictment charged the instrument used with the words, "some sharp instrument" without alleging that said instrument used was not known to the grand jury and a better description could not be obtained, etc., the same was insufficient. Following Jarasco v. State, 6 Texas Crim. App., 238, and other cases.

**2.—Same—Insufficiency of the Evidence.**

Where the indictment charged the defendant with stabbing the deceased with some sharp instrument without a further description, and the evidence failed to show that he did use a knife or any sharp instrument, the jury could not convict defendant on said count of the indictment.

**3.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence raised the issue of circumstantial evidence, a failure of the court to charge thereon was reversible error.

**4.—Same—Instrument Used—Deadly Weapon—Intent to Kill.**

Where, upon trial of murder, it was not shown by the evidence whether the instrument used was a deadly weapon or one likely to produce death, and did not make evident defendant's intention to kill, the court should have submitted article 1147, Revised Penal Code.

**5.—Same—Aggravated Assault—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence raised the issue of aggravated assault, the court should have submitted the same in a proper charge to the jury.

**6.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.**

Where, upon trial of murder, the jury in their retirement alluded to defendant's failure to testify, the same was reversible error.

**7.—Same—Argument of Counsel.**
   Counsel for the State are warned in the opinion of the court not to allude to defendant's failure to testify.

   Appeal from the District Court of Wise. Tried below before the Hon. F. O. McKinsey.
   Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.
   The opinion states the case.

   *McMurray & Gettys,* for appellant.—On question of description of instrument used and charge of court thereon: Pollard v. State, 26 S. W. Rep., 70.
   On question of court's failure to charge on circumstantial evidence: Barnes v. State, 41 Texas, 342; Struckman v. State, 7 Texas Crim. App., 581; Crowell v. State, 24 id., 404; Early v. State, 50 Texas Crim. Rep., 344, 97 S. W. Rep., 82; Bonner v. State, 58 Texas Crim. Rep., 195, 125 S. W. Rep., 22; Burnham v. State, 61 Texas Crim. Rep., 616, 135 S. W. Rep., 1175; Trejo v. State, 74 S. W. Rep., 546; Black v. State, 18 Texas Crim. App., 124.
   On question of court's refusal to submit article 1147, Revised Penal Code: Polk v. State, 60 Texas Crim. Rep., 150, 131 S. W. Rep., 580; Holt v. State, 58 Texas Crim. Rep., 295, 125 S. W. Rep., 43; Woodall v. State, 58 Texas Crim. Rep., 513, 126 S. W. Rep., 591; Berry v. State, 58 Texas Crim. Rep., 291, 125 S. W. Rep., 580; Snowberger v. State, 58 Texas Crim. Rep., 530, 126 S. W. Rep., 878; Coleman v. State, 53 Texas Crim. Rep., 578, 112 S. W. Rep., 1072; Moore v. State, 59 Texas Crim. Rep., 361, 128 S. W. Rep., 1115; Johnson v. State, 60 S. W. Rep., 48.
   On question of allusion to defendant's failure to testify: Dawson v. State, 24 S. W. Rep., 414; Brown v. State, 57 Texas Crim. Rep., 269, 122 S. W. Rep., 565; Wyatt v. State, 58 Texas Crim. Rep., 115, 124 S. W. Rep., 929; Doulton v. State, 73 S. W. Rep., 395; Buessing v. State, 63 S. W. Rep., 318.

   *C. E. Lane,* Assistant Attorney-General, and *W. C. Shults* and *R. F. Spencer, Jr.,* for appellant.—On question of court's failure to charge on circumstantial evidence: Williams v. State, 58 Texas Crim. Rep., 82, 124 S. W. Rep., 954; Cabrera v. State, 56 Texas Crim. Rep., 141, 118 S. W. Rep., 1054.
   On question of court's failure to charge on aggravated assault: Crutchfield v. State, 152 S. W. Rep., 1053.
   On question of allusion to defendant's failure to testify: Rhodes v. State, 153 S. W. Rep., 128; Kelly v. State, 151 S. W. Rep., 304; Austin v. State, 42 Texas, 355; Anschicks v. State, 6 Texas Crim. App., 524.

   DAVIDSON, Presiding Judge.—Appellant was convicted of man-

slaughter, his punishment being assessed at two years confinement in the penitentiary.

The indictment contains two counts, the first charging that appellant killed the deceased, Ben Motley, by stabbing him with a knife, and the second by stabbing him "with some sharp instrument." The second count of the indictment is attacked as being insufficient; that the simple allegation stabbing him with some sharp instrument is not a sufficient designation of the instrument with which the stabbing occurred. We are of the opinion this contention is correct. Where the instrument used is not known to the grand jury or can not be obtained by reasonable diligence, then it is incumbent upon the grand jury to allege in addition to the fact that it was a sharp instrument or blunt instrument, etc., a further description is unknown to the grand jury. We would suggest that if it is thought necessary to prosecute this case further, that another indictment be preferred charging the offense in conformity with the decisions and the well understood jurisprudence. The above has been the rule in Texas, and many cases have been decided by this court involving this principle since the case of Jarasco v. State, 6 Texas Crim. App., 238, as well as other cases involving this direct question. See Drye v. State, 14 Texas Crim. App., 185; Jackson v. State, 34 Texas Crim. Rep., 38.

It is also urged that the court erred in authorizing the jury to convict on the second count in the indictment. Taking up this matter as presented not only as above alleged but as here presented connected with the charge, we would say that the court did err in submitting this, inasmuch as the indictments did not sufficiently charge the offense, and in response to another question growing out of this phase of the case, would say that the conviction can not be sustained predicated upon this count. The evidence fails to show that defendant, if he was the party who inflicted the wound, had a knife; in fact, no witness testified that he had a knife or any sharp instrument. The two witnesses relied upon by the State to connect the defendant with the transaction testified they did not see him have anything in his hand, and there were others engaged in the "free-for-all fight" that was going on at the time deceased received the wound from which he died. It would seem satisfactorily apparent that the jury did not convict under the first count, because no witness testified to the fact that appellant had a knife, even if he was the party who inflicted the injury; and if the jury concluded that he was the party who did the injury, they could only do so from the fact that he was engaged in the trouble in which the injury was inflicted.

This brings us to another proposition urged by appellant, towit: the court not only failed to charge on circumstantial evidence but refused to give a requested instruction submitting this theory of the law. We are of the opinion that, under the authorities, this proposition is correct. The evidence shows on the night of the trouble a social function and dance was being carried on at the home of the deceased. Appellant was a comparative stranger to deceased and his wife, and there had been no

difficulty or unpleasant words or occurrences happening between appellant and the deceased prior to the tragedy. Deceased had had some trouble with another party but appellant was in no way involved in that trouble. Appellant had danced one set with the wife of the deceased, and had gone out of doors with one or two friends. Directly the deceased came out in company with a friend and walked out in front of the house through a gate, which was to the east of the house, and ten or twelve steps into the public road. Off a short distance several parties were engaged in an angry altercation, and some of the witnesses say they were fighting. Near by there was another crowd, but beyond those engaged in the melee. The State's witnesses put appellant with the crowd that was fighting; others put him with the other crowd. The deceased, hearing the altercation, became somewhat indignant from the fact it was going on at or near his residence, and remarked to the friend who was with him he would go down and stop it or make them leave, or some similar expression, further stating he would not permit such things to go on at his house or near his home. He went to where the crowd was, and the State's witnesses say the melee continued, and it appeared to one of the witnesses that all of the crowd which deceased approached jumped on and began fighting him. The State's testimony, without going into detail, is to the effect that appellant was with this crowd and struck two licks at the deceased, as the witnesses term it, striking at him "overhanded." It seems to have occurred this way: That while they were fighting one of the witnesses pulled off the man whom the other witness says was appellant; that before pulling him off he had struck one overhanded lick. Appellant or the man who was pulled off remarked, "Do not hold me, turn me loose," which the witness did and appellant struck another overhanded lick. Directly deceased emerged from the crowd and either sat down or fell down and shortly afterwards died. None of the crowd actually engaged in this fight testified in the case, as we understand this record. Nothing was said except as above detailed. Who these people were outside of the evidence above mentioned tending to show appellant was in the crowd, is not shown by the facts. Appellant offered testimony to the effect that he was with the other crowd, not engaged in the trouble at all, and was about that time engaged with his friends in hitching up a buggy and immediately left. The two witnesses who testified for the State swear they saw nothing in the hands of appellant. He went home that night and was arrested the following day. Two doctors were called in immediately. One of them testified that he saw the wound but did not examine the body or the wound, just glanced at it; he describes the wound as being below the ribs. The other doctor says he did not examine the wound; he located it, and said it was at the apex of the heart. He says he did not examine the wound and did not know whether it went straight in or upward or downward, nor the depth of the wound. Deceased lived but a short time. He made no statement as to the difficulty. The only remark he is shown to have

made immediately after being wounded was, "Oh, Lordy," or a similar expression. The jury perhaps may have been justified in believing from the evidence of the two State's witnesses that appellant did strike the deceased, inasmuch as he was "striking overhanded" at him. There were others engaged in the melee. The deceased had had some trouble with another party shortly prior to this difficulty. He had had no words or altercation or unpleasantness of any sort with appellant. If they were all engaged in a difficulty and fighting the deceased as these two witnesses would indicate, then it is a matter of conjecture as to who used the instrument that produced the wound. How the difficulty came up between the parties is left entirely to conjecture. They were engaged in trouble when the deceased approached them with the expressed determination to make them leave. What he said or what brought about the trouble between himself and the crowd is not shown further than has been stated. It is therefore but an inference that appellant struck the deceased, and still further a presumption based upon that inference or presumption that he had a knife, and still another presumption that he used the knife or sharp instrument or whatever he had. This is from the State's case. The defendant's testimony excludes any connection with the trouble. The other parties engaged in the trouble had equal facilities with the appellant if he was engaged in it to do the cutting or inflict the injury. We think, therefore, under all the circumstances, a charge on circumstantial evidence should have been given, and the court erred in not giving the requested instruction.

Again it is urged that error was committed in not submitting article 1147 of the Revised Penal Code, which reads as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." The instrument or the means used in this case is a matter of inference and conjecture. The depth of the wound is not shown. A small pocket-knife could have inflicted the wound and brought about the killing, if, as one of the physicians said, it was near the apex of the heart. The intention of the party here is *not made evident that he intended to kill,* and the main basis of a presumption looking to that end is the fact that the party was stabbed near the heart. This would not necessarily show a deadly weapon or an evident intent to kill under the circumstances of this case. There was no previous trouble between them. There is nothing to indicate, outside of the blow struck and injury inflicted, that there was any purpose to kill, and in a general fight where several are engaged in it, fighting promiscuously or striking at random, it may have been just as probable a sudden stroke not definitely aimed for the purpose of killing. There is a long line of cases which require a charge under this statute to be given. There are too many conjectures and inferences in this case as to the weapon and the purposes and object of the parties to lead

to the conclusion that the *intent to kill was evident.* The contention therefore that aggravated assault should have been submitted is sound.

Another proposition is submitted for reversal, which, we think, is well taken. This grows out of the misconduct of the jury in their retirement in considering the case. During their retirement they discussed and talked about why the defendant did not take the stand and testify in his own behalf. It is deemed unnecessary to go into a detailed statement of this matter. On two or three occasions during the discussion of the case some juror would bring it up and talk about it, and the foreman would then read the charge of the court to them in which they were instructed not to discuss it. After reading it the first time it came up again and he again read the charge and warned them. Without discussing this further, as it may not occur upon another trial, we are of opinion under the cases and proper construction of the statute the jury passed the legal limit in discussing appellant's failure to testify.

Again, one of the counsel in his discussion to the jury came dangerously near the line on the same proposition; that is, allusion to the failure of the defendant to testify. Upon another trial this should be avoided. It is unnecessary to discuss that matter, however, here, as it ought not to and doubtless will not occur upon another trial.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*