### Allie Clark v. The State.

#### No. 3553.　Decided May 19, 1915.

**1.—Assault to Murder—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence, although conflicting, was sufficient to sustain the conviction, there was no reversible error on that ground.

**2.—Same—Defendant's Failure to Testify—Misconduct of Jury.**

Where it clearly appeared that the jury before arriving at a verdict discussed defendant's failure to testify, and his failure to explain why he had a gun with him and that such discussion had its influence on at least part of the jury, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Trinity.　Tried below before the Hon. S. W. Dean.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Poston & Dotson,* for appellant.—On question of allusion to defendant's failure to testify: Jones v. State, 72 Texas Crim. Rep., 496, 162 S. W. Rep., 1142; Portwood v. State, 71 Texas Crim. Rep., 447, 160 S. W. Rep., 345; Huddleston v. State, 70 Texas Crim. Rep., 260, 156 S. W. Rep., 1168; Tuller v. State, 58 Texas Crim. Rep., 571.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was convicted of assault to murder, and his punishment assessed at two years confinement in the State penitentiary.

The State's case as testified to by Mr. and Mrs. George Bethard and their daughter, Miss Berta, is that they were in a wagon on their way home.　They admit that Mr. Bethard had a gun in the wagon, but deny that he at any time attempted to use it.　They say that appellant passed them in the road, and at that time a former difficulty was agreed to be dropped, and Mr. Bethard and appellant would be friends and speak when they met.　That appellant rode on, and the next they saw of him he was behind a pine tree, and had a shotgun in his hands, and as they came up, Mr. Bethard says he heard someone say, "Get out of the way," and as he looked around appellant threw his gun on him, when Mrs. Bethard requested him not to shoot, but, nevertheless, appellant shot, saying, "I will kill the God-damned gray-headed son-of-a-bitch."　The daughter jumped and prevented appellant from shooting again.

It is thus seen the State's testimony would amply support the verdict. However, Charlie Smothers, Tom McFarland, Omer Chessner, and John Chessner were present, and they testify to a different state of facts. In substance, they say that appellant was standing near the store, and the prosecuting witness, his wife and daughter came driving up.　That

as they drove up Mr. Bethard reached for his gun, and as he did so appellant called to Mr. Bethard three times, "Don't draw that gun." That appellant made no attempt to shoot until Mr. Bethard drew his gun.

It is thus seen that a sharp issue was raised as to who made the first demonstration. The court fairly submitted that issue, and the jury finds against the contention of appellant, but no one could have criticised them under the testimony if they had found appellant acted in self-defense.

With the issue thus drawn by the testimony, appellant not testifying, it appears the jury discussed appellant's failure to testify, and why he did not take the stand and explain why he had the gun with him, The jury even went so far as to send to the court the following question, while considering the case: "We want to know what Allie Clark was doing down there with the gun." Of course, the court did not attempt to answer the question. Each juryman placed on the stand says that the failure of the defendant to testify was discussed before the jury arrived at a verdict. Some say the discussion did not influence them, while others intimate it might have done so. W. H. McClendon testified: "I was one of the jurors in the trial of the case of the State of Texas v. Allie Clark. After the jury had retired to consider of their verdict the fact that Allie Clark failed to testify for himself in this case was discussed. That had some influence on me. I thought that it influenced the other jurors. That was before we arrived at a verdict in the case." Mr. Sowell testified in regard to the question propounded to the court: "I do not know whether my verdict would have been different had I had that statement or not. I think the biggest part of us, if not all of us, would rather have had his statement, and some of them suggested, and it wasn't me that suggested it, that we get it. Some of the men that were in favor of conviction used that argument of his failure to testify as showing his guilt. I couldn't say which one it was, but there was several."

By the testimony of all the jurors who testified it is made plain that the fact that defendant had not testified was discussed; that he should have taken the stand and explained why he had the gun, and the fact he did not do so influenced at least some of them in their action. The jury thought he should do so, and even went so far as to request the court to have him explain this. Under our law it would be immaterial why he had the gun down there, if the prosecuting witness first reached for his gun, as testified to by appellant's witnesses, and led appellant, by his acts and conduct, to believe his life was in danger.

It being made clearly to appear that the jury before arriving at a verdict did discuss appellant's failure to testify, and the failure to explain why he had the gun with him, and that such discussion had its influence on at least a part of the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*