JESSE STONE v. THE STATE.

No. 3981.   Decided March 15, 1916.

1.—Arson—Sufficiency of the Evidence.

Where, upon trial of arson, the evidence was sufficient to sustain a conviction, there was no error on that ground alone.

2.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.

Where, upon trial of arson, the record on appeal showed that some of the jurors, before a verdict was found, alluded to defendant's failure to testify and one of the jurors swore that the reference was made when the other jurors where around those voting not guilty, trying to get them to agree to a verdict of guilty, and after they had reached a verdict of guilty, the jury while still in the jury room entered into a discussion of defendant's failure to testify, saying that if he had taken the stand and explained about the tracks, etc., the verdict might have been different, and that this seemed to have been on their minds before they agreed upon a verdict, the same was reversible error.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*A. E. Hampton* and *Smith & Palmer,* for appellant.—On question of allusion to defendant's failure to testify: Fine v. State, 77 S. W. Rep., 806; Tate v. State, 42 S. W. Rep., 595; Wilson v. State, 46 S. W. Rep., 251; Buessing v. State, 63 S. W. Rep., 318; Dalton v. State, 73 S. W. Rep., 395; Beard v. State, 65 S. W. Rep., 905; Maples v. State, 60 Texas Crim. Rep., 169, 131 S. W. Rep., 567.

On question of insufficiency of the evidence: Hester v. State, 51 S. W. Rep., 932; Brown v. State, 67 Texas Crim. Rep., 543, 150 S. W. Rep., 436.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of defendant's failure to testify: Coffman v. State, 73 Texas Crim. Rep., 295.

HARPER, JUDGE.—Appellant was convicted of arson and his punishment assessed at five years confinement in the State penitentiary.

Appellant earnestly insists that the circumstances are insufficient to sustain the verdict. We have read and re-read the testimony, and while the only circumstances depended upon to show appellant guilty are (1) that appellant had ill-will towards the person who had the house rented, and (2) tracks leading from the building to appellant's house, and his conduct when he saw the officers following the tracks, yet, taking the tracks as shown by the plot and the way they were made, their direction and course, we would hardly feel authorized to disturb the verdict on this ground alone.

Appellant contends that the jury discussed his failure to testify while considering the case, and asks for a reversal on this ground. Ten of the jurymen testify, and some of them say that all that occurred was that while the jury was discussing the case some one of them remarked, "That he wondered why the defendant did not go on the stand and testify; that he would love to have heard him testify, and had he done so they might have viewed the matter differently." That the foreman then promptly informed the jury they were instructed not to consider nor discuss the failure of defendant to testify, which stopped the talk. They virtually all agree that this much did take place, some saying it occurred at night, and others say it occurred just before they agreed on the verdict next day. And all seem to agree that as soon as the verdict was agreed on and written up a general discussion took place about defendant not testifying. This took place after the verdict was signed but before they left the jury room. It is thus made apparent that the failure of defendant to testify was in the mind of the jury, whether discussed or not. All ten of the jury agree this much was said before the verdict was agreed on, "if he had gone on the stand, it might be different, or something like that." The verdict in this case depends on the tracks for conviction. The evidence of the State's witnesses show the defendant was at this house about noon of the day it was burned at 8 o'clock that night, and went from this house to his home, but this witness says the defendant did not get into the Hanson field, where the tracks were found, upon which the State depends for conviction. When the officer was following this track, the defendant told him he had made those tracks, but that he was not guilty of burning the house. The evidence shows he was frequently in this section hunting and in going to work. This is doubtless what they wanted him to explain,—when he made those tracks. Instead of taking the stand and endeavoring to explain those tracks, he relied on an alibi, sworn to by his wife and wife's sister, and other witnesses. Mr. Randall testifies that at the time the jurors who were for a conviction were around him and Mr. Chilcoat trying to get them to agree on a verdict

of guilty, someone said he would have loved to have heard the defendant testify, and he, Randall, replied, "I would like to have heard the defendant—it might have changed my opinion of the case. Yes, I had it in my mind about the defendant not going on the stand to testify and wanted to hear him testify. I do not know what effect it had on my mind as to what the juror whoever he was said about the defendant not going on the stand and testifying. Of course if he had gone on the stand and testified my vote might have been different, and I expressed myself that way in the jury room, and others expressed themselves something similar to that." However, he says this did not influence him in rendering the verdict. On cross-examination he said, "I do not know who made the first remark; there were two or three said something about him not testifying."

Mr. Chilcoat says he heard some remarks made, but he himself said nothing about the matter, but "that his failure to go on the stand and explain about these tracks was in my mind while we were deliberating on the case."

Article 790, allowing a defendant to testify, if he elects to do so, but providing that a failure to testify shall not be taken as a circumstance against him, nor shall the same be alluded to nor commented on, since its enactment has been frequently before this court, and it is the rule that a mere incidental reference to it in the jury room will not be cause for reversal, where it is apparent that the failure of the defendant to testify was not considered by the jury. Probest v. State, 60 Texas Crim. Rep., 608; Powers v. State, 69 Texas Crim. Rep., 494, 154 S. W. Rep.; 1020; Espinoza v. State, 73 Texas Crim. Rep., 237, 165 S. W. Rep., 208; Coffman v. State, 73 Texas Crim. Rep., 295, 165 S. W. Rep., 939; Howard v. State, 76 Texas Crim. Rep., 297, 174 S. W. Rep., 607; Walling v. State, 59 Texas Crim. Rep., 279.

In the cases of Jones v. State, 72 Texas Crim. Rep., 496; Clark v. State, 76 Texas Crim. Rep., 645; Portwood v. State, 72 Texas Crim. Rep., 447; Huddleston v. State, 70 Texas Crim. Rep., 260; Richards v. State, 59 Texas Crim. Rep., 203; Thorpe v. State, 40 Texas Crim. Rep., 346; Wilson v. State, 39 Texas Crim. Rep., 365, it is held that where the allusion to the failure of the defendant to testify was more than an incidental reference, and perhaps had some influence in the rendering of the verdict, it was held to present error.

In this case at least one of the jurors swears the reference was made when the other jurors were around those voting not guilty, and trying to get them to agree to a verdict of guilty. Some say the reference was made at night, some fifteen or eighteen hours before the verdict was finally reached; others say the reference was made in the afternoon of the second day just before the verdict was reached, and in addition to this, it is shown that as soon as the verdict was agreed on and written, and while still in the jury room, the jury as a whole entered into a discussion of the failure of the defendant to testify, and said if he had taken the stand and explained about the tracks the witnesses testify he admitted he had made, the verdict might have been different, and we

can not say that his failure to testify was not, in the language of the statute, taken by the jury as a circumstance against him when alluded to in the jury room before the verdict was agreed on. To our mind it appears that this circumstance was, as testified to by Mr. Chilcoat, "His failure to go on the stand and explain about those tracks was in my mind while deliberating on the case," was also in the minds of the others, and the reference, allusion or discussion of the matter was of such a nature that it might and probably did result in a verdict of guilty, when otherwise such a result might not have been reached. Viewing the matter in this light, we are of the opinion the case should be reversed and remanded.

The judgment is reversed and the cause remanded.