JERRY HAYNES v. THE STATE.

No. 5075.    Decided June 26, 1918.

**1.—Murder—Mental Condition of Defendant—Temporary Insanity—Charge of Court.**

Where, upon trial of murder, the evidence showed the voluntary recent use of intoxicants and blows inflicted upon the head of defendant, his mental condition from this standpoint became an issue in the case, and proper instruction should have been submitted to the jury.

**2.—Same—Charge of Court—Negligent Homicide—Weight of Evidence.**

Where, upon trial of murder, the court in his charge on negligent homicide in the second degree required the defendant to show that he used such a degree of care and caution as a man of ordinary prudence would use under like circumstances, this under the facts in the instant case was a charge on the weight of the evidence, which showed accident and raised the question of unintentional killing.

**3.—Same—Defendant's Failure to Testify—Misconduct of Jury.**

Where the jury discussed the failure of the defendant to testify in his own behalf, the same was reversible error.

Appeal from the District Court of Upton.    Tried below before the Hon. J. R. Warren.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lasseter & Gentry,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and allotted ten years confinement in the penitentiary.

It is unnecessary to state with any detail the testimony. The State's contention was that appellant was guilty of murder in killing Elias Williams. There seems to have been no previous trouble between them. Appellant was at a social gathering when the shooting occurred, and there is testimony in the record showing that he was very drunk, and was misbehaving in his maudlin condition, and one or two parties undertook to carry him away from the place. He became a little obstreperous and was knocked down two or three times by the parties in charge of him. Finally they left him and went back to the crowd, and appel-

lant came staggering back, firing his pistol at random. One of the shots took effect in Elias Williams, resulting in his death The intoxication was from the voluntary use of whisky. His mental condition from this standpoint became an issue in the case, and was submitted by the court. The blows upon the head which knocked him down also entered into the question of his mental status. Upon another trial the jury should be appropriately instructed with reference to his mental condition resulting from the combination of the blows and intoxication. If the blows rendered him temporarily insane, or put him in a condition where he did not know right from wrong, or in fact did not know what he was doing, the jury then should be appropriately instructed.

The court submitted the issue of negligent homicide in the second degree. This charge is criticised and exception timely and properly reserved. The court's charge in full upon this subject is as follows:

"Now, bearing in mind the foregoing instructions with reference to negligent homicide of the second degree, if you shall believe beyond a reasonable doubt that on or about December 25, 1917, in the county and State aforesaid, the defendant was in the performance of an unlawful act, towit: rudely displaying and discharging a pistol near the private house of Jim Williams, and did then and there in the performance of said unlawful act, if any, and without any apparent intent to kill, by negligence or carelessness cause the death of Elias Williams by then and there shooting said Elias Williams with a pistol, there being then and there an apparent danger of causing the death of said Elias Williams by so rudely displaying and discharging said weapon, if he did, which danger would have been known to the defendant if he had used that degree of care and caution which a man of ordinary prudence would use under like circumstances, then you will find the defendant guilty of negligent homicide of the second degree and assess the proper punishment therefor."

We are of opinion this charge is upon the weight of the evidence. It occurs to us that the court required the defendant, under the statements in the charge, to show that he used such a degree of care and caution as a man of ordinary prudence would use under like circumstances. This is a matter for the jury to determine from the facts, that is, whether appellant used such a degree of care and caution as an ordinary man would use under like circumstances. Appellant was violating the law in two respects if responsible for his acts at the time, towit: rudely displaying a pistol where people were congregated on a social occasion; and, second, in shooting his pistol at said time and place. Appellant claimed irresponsibility and want of knowledge in fact that he fired the pistol resulting from a combination of blows on the head, which knocked him down, and his mental condition by being very drunk. These were matters that entered into the consideration of the case necessarily upon the question of carelessness or negligence. The use of intoxicants, or a mental condition produced by their voluntary use, would not justify an illegal act in and of itself,

but it might do so combined with two blows on the head, both of which knocked him down. The witnesses testified in fact that they thought when knocked down the second time that appellant would not be able to get up and about. But in any event, the court should not have instructed the jury that this would render him guilty of negligent homicide to the extent of placing the burden on him to show to the contrary. It was a matter of deduction by the jury from the facts whether under such circumstances he did use or would be responsible for the use of such care and caution as an ordinary individual or party under like circumstances would use. From the viewpoint of this phase of the testimony this killing would have been more in the nature of an accident, and the question of an intentional killing would be out of the case. Under this view of the testimony the jury might readily have believed that he did not intend to kill; at least the testimony would have justified them in reaching that conclusion. They might have believed in this connection that there was apparent danger of killing. The court, however, did not charge upon the question of accident, but limited the consideration of the jury to the question of negligent homicide, and instructed them that this would be sufficient if he did not exercise that caution and care which ordinarily should be exercised under such circumstances. For this reason this judgment, we think, ought to be reversed.

There is another question which we think requires a reversal. The jury discussed the failure of the appellant to testify in his own behalf. This seems to be uncontroverted, and we think for this reason the judgment should be reversed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*