C. W. ROBERTS v. THE STATE.

No. 4965. Decided April 16, 1919.

**1.—Forgery—Failure of Defendant to Testify—Misconduct of Jury.**

Where, upon trial of forgery, the jurors in their retirement discussed the failure of the defendant to testify on the trial, the same was reversible error.

**2.—Same—Practice on Appeal.**

Where the judgment was reversed and the cause remanded upon other grounds, other matters which may not occur again, and yet others which cannot be considered in the absence of a statement of facts, need not be reviewed.

**3.—Same—Indictment—Forgery—Pleading.**

Where, upon trial of forgery, under article 947 Branch Ann. P. C. page 882, the indictment was sufficient, there was no reversible error on that ground, Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Bee. Tried below before the Hon. F. G. Chambliss, judge.

Appeal from a conviction of forgery; penalty, five years imprisonment in the penitentiary.

(Copy of Indictment)

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS.

The Grand Jurors for the County of Brooks, State of Texas, duly selected and empannelled and organized as such, at the October

Term, A. D., 1916, of the District Court for said County, upon their oaths in said Court present that C. W. Roberts, on or about the 9th day of December, A. D. One Thousand, Nine Hundred and Twelve, and anterior to the presentment of this indictment, in the County of Brooks and State of Texas, with the intent to injure and defraud and without lawful authority, did aid, assist, advise and encourage the false making and forging and affixing of fictious and pretended signatures, by some person or persons, whose names are to the Grand Jurors unknown, to a certain instrument, to-wit, a deed, purporting to be the act of M. T. Nix, Eustacio Montalbo, Francisco S. de Montalbo, Trinidad S. de Gonzales, Willie Gonzales, Emeteria A. de Salinas, Irene Salinas, Rosa Salinas, Emeterio Salinas, Weneslado Salinas, Juan Almarez, Eluteria Almarez, Antonio Pena Jr., Mateo Pena Jr., Juan Manuel Ramirez, Jr., Anastacio Garcia, Jr., Antonio Garcia, Jr., Margarita Gonzales, Florenco Gonzales, Ramon Gonzales, Jr., Jose Marcelo Ynojoso, Jr., Antonio Ysugurus, Jr., Victoria Gonzales, Antonio Gonzales, Francisco Pena, Philip de la Pena, Ignacio de la Pena, Ja., S. de la Pena, J. Pena, C. Ramirez, A. Ramirez, J. C. Ramirez, Jr., Rosa de la Pena, V. Gonzales, Irene X. Ynojoso, J. Salinas, and C. Salinas, which said instrument then and there related to and effected an interest in lands in Texas, and which said instrument purports to be an instrument entitling the said C. W. Roberts, as grantee, to the land conveyed therein, and is of the tenor following, that is to say:
The State of Texas
County of Bexar.

Known all men by these presents: That I. M. T. Nix, of Webb County, Texas, for myself, and by power of attorney in fact for Eustacio Montalbo and Francisca S. de Montalbo, Trinidad S. de Gonzales, Willie Gonzales, of Duval County, Texas, and Emeteria A. de Salinas, Irene Salinas, Rosa Salinas, Weneslado Salinas, Juan Almorez and Eluterio Almarez, of Webb County, Texas, and for ourselves, Antonio Pena, Jr., Mateo Pena, Jr., Rafael Ramirez, Juan Manuel Ramirez, Jr. and Anastacio Garcia, Jr., Antonio Garcio, Jr., Margarita Gonzales, Florencio Gonzales, Ramon Gonzales, Jr. Jose Marcelo Ynojso, Jr., and Antonio Ysugures, Jr., Victoria Gonzales, Antonio Gonzales, Francisco Pena, Phillip de la Pena, and Ignacio de la Pena, Jr., S. de la Pena, J. Pena, C. Ramirez, A. Ramirez, J. C. Ramirez, Jr., Rosa de la Pena, V. Gonzales, Yrene Ynojso, J. Salinas, C. Salinas, for ourselves, of Zupata, Starr, Brooks, Jim Wells and Duval Counties, Texas, in consideration of Ten Thousand and no/100 Dollars, paid and other good and valuable considerations moving now to us, in hand paid by C. W. Roberts, the receipt of which is hereby acknowledged and confessed, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said C. W. Roberts, of the City of San Antonio, County of Bexar, and the State of Texas, all that certain lot, tract or parcel of land,

lying and being situated in Brooks, Starr, Jim Wells, Zapata, and Duval Counties, Texas, and described as follows:

1. Abstract No. 131, the Francisco Montalbo Survey, containing 17,712 acres of land, situated in Brooks County, Texas.

2. Abstract No. 151, the heirs of Rafael Garcia Salinas survey, containing 22,140 acres of land, situated in Brooks County, Texas.

3. Abstract No. 158, the Jose Luis Salinas survey, containing 22,140 acres of land situated in Brooks County, Texas.

4. Abstract No. 168, the Antonio Canales Salinas survey, containing 8,815 acres of land situated in Starr County, Texas.

5. Abstract No. 146, the heirs of Joaquin Salinas survey, containing 5,746 acres of land situated in Starr County, Texas.

6. Abstract No. 163, the Juan Salinas survey, containing 5,764 acres of land situated in Starr County, Texas.

7. Abstract No. 141, the heirs of Ignacio de la Pena survey, containing 44,280 acres of land, 20,280 acres of said land is situated in Jim Wells County, Texas, and 24,000 acres of said land is situated in Brooks County, Texas.

8. Abstract No. 140, the heirs of Ignacio de la Pena survey, containing 22,140 acres of land, 4,702 acres of said land is situated in Duval County, Texas, and 4,518 acres of said land is situated in Jim Wells County, Texas, and 12,920 acres of said land is situated in Brooks County, Texas.

9. Abstract No. 432, the heirs of Ignacio de la Pena survey, containing 22,140 acres of land, situated in Brooks and Duval Counties, Texas.

10. Abstract No. 435, the Rafael de la Pena survey, containing 22,140 acres of land, situated in Brooks and Zapata Counties, Texas.

11. Abstract No. 75, the heirs of Philip de la Pena survey, containing 22,140 acres of land, situated in Zapata County, Texas.

12. Abstract No. 70, the San Jacinto de la Pena survey, containing 6,876 acres of land, situated in Zapata County, Texas.

13. Abstract No. 71, the Joaquin Pena survey, containing 6,791 acres of land, situated in Zapata County, Texas.

14. Abstract No. 72, the Mateo Pena survey, containing 6,112 acres of land situated in Brooks County, Texas.

15. Abstract No. 437, the Francisco Pena survey, containing 7,712 acres of land, situated in Brooks County, Texas.

16. Abstract No. 451, the Rafael Ramirez survey, containing 22,140 acres of land, 21,530 acres of said land is situated in Duval County, Texas, and 610 acres of said land is situated in Brooks County, Texas.

17. Abstract No. 146, the Antonio Ramirez survey, containing 6,399 acres of land, situated in Starr County, Texas.

18. Abstract No. 76, the Jose C. Ramirez survey, containing 6,159 acres of land, situated in Zapata County, Texas.

19. Abstract No. 77, the heirs of Christova Ramirez, containing 5,986 acres of land, situated in Zapata County, Texas.

20. Abstract No. 475, the Rafael Ramirez survey, containing 22,140 acres of land, situated in Duval County, Texas.

21. Abstract No. 450, the Juan Manuel Ramirez survey, containing 44,280 acres of land, situated in Brooks County, Texas.

22. Abstract No. 147, the Jose Miguel Ramirez survey, containing 35,420 acres of land, situated in Brooks County, Texas.

23. Abstract No. 193, the Jose Marcelo Ynojoso survey, containing 61,992 acres. of land, 58,048 acres of said land is situated in Duval County, Texas, and 3,944 acres of said land is situated in Brooks County, Texas.

24. Abstract No. 91, the heirs of Anastacio Garcia survey, containing 22,140 acres of land, 20,590 acres of said land is situated in Zapata County, Texas, and 1,550 acres of said land is situated in Brooks County, Texas.

25. Abstract No. 104, the Antonio Garcia survey, containing 22,140 acres of land, situated in Brooks and Zapata County, Texas.

26. Abstract No. 194, the Antonio Ysugures survey, containing 18,018 acres of land situated in Brooks County, Texas.

27. Abstract No. 436, the Antonio Pena survey, containing 18,594 acres of land, situated in Brooks County, Texas.

28. Abstract No. 251, the heirs of Victoria Gonzales survey, containing 17,412 acres of land, 3,087 acres of said land is situated in Starr County, Texas, and 14,312 acres of said land is situated in Brooks County, Texas.

29. Abstract No. 102, the Margarita Gonzales survey, containing 6,218 acres of land, situated in Starr County, Texas.

30. Abstract No. 95, the Florencio Gonzales survey, containing 6,049 acres of land situated in Starr County, Texas.

31. Abstract No. 85, the Ramon Gonzales survey, containing 4,605 acres of land situated in Starr County, Texas.

32. Abstract No. 227, the heirs of Jose Antonio Gonzales survey, containing 23,740 acres of land, situated in Duval County, Texas.

To have and to hold, the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said C. W. Roberts, his heirs and assigns forever. And we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend, all and singular, the said premises, unto the said C. W. Roberts, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Witness our hands at San Antonio, Texas, this the 9th day of December, A. D. 1912.

Witnesses:

J. G. JONES.

C W. BISHOP.

The State of Texas

County of Bexar.

Before me, the undersigned authority, a Notary Public in and for Bexar County, Texas, on this day personally appeared M. T. Nix, for himself, and by power of attorney in fact in and for Eustacio Montalbo, and Francisco S. de Montalbo, Trinidad S. de Gonzalez, Willie Gonzalez, Emeteria A. de Salinas, Irene Salinas, Rosa Salinas, Emeteria Salinas. Weneslado Salinas, Juan Almerez, Eluterio Almarez, and also for theirselves, Antonio Pena, Jr., Mateo Pena, Jr., Rafael Ramirez, Juan Manuel Ramirez, Jr., and Anastacio Garcia, Jr., Antonio Garcia, Jr., Margarita Gonzalez, Florencio Gonzalez, Ramon Gonzalez, Jr., Jose Marcelo Ynjso and Antonio Ysugures, Jr. Victoria Gonzalez, Antonio Gonzalez, Francisco Pena, Philip de la Pena and Ignacio de la Pena, Jr., S. de la Pena, J. Pena, C. Ramirez, A. Ramirez, J. C. Ramirez, Jr., Rosa de la Pena, V. Gonzalez, Irene Ynojoso, J. Salinas, C. Salinas, for ourselves, known to me to be the persons whose names are subscribed to the foregoing instrument, and they acknowledged to me that they executed the same for the purposes and considerations therein expressed.

Given under my hand and the seal of office, this the 9th day of December, A. D. 1912.

(L. S.)

W. B. Dennis, a Notary Public in and for Bexar County, Texas.

Whereas, in truth and in fact, the said signatures were then and there fictitious, and were not made by the said M. T. Nix, Eustacio Montalbo, Francisco S. de Montalbo. Trinidad S. de Gonzales. Willie Gonzales, Emeteria A. de Salinas, Irene Salinas, Rosa Salinas, Emeteria Salinas, Weneslado Salinas. Juan Almarez, Eluterio Almarez, Antonio Pena, Jr., Mateo Pena. Jr., Juan Manuel Ramirez, Jr., Anastacio Garcia, Jr., Antonio Garcia, Jr., Margarita Gonzales, Florenco Gonzalez, Ramon Gonzalez, Jr., Jose Marcelo Ynojoso, Jr., Antonio Ysurgurus, Jr., Victoria Gonzalez, Antonio Gonzalez, Francisco Pena, Philip de la Pena, Ignacio de la Pena, Jr., S. de la Pena, J. Pena, C. Ramirez, A. Ramirez, J. C. Rarimez, Jr., Rosa de la Pena, V. Gonzalez, Irene X. Ynojoso. J. Salinas and C. Salinas, as he, the said C. W. Roberts, then and there well knew, against the peace and dignity of the State.

B. T. Henry,
Foreman of the Grand Jury.

Witnesses: Oscar Kirkland, Ed. C. Lasater. A. Schroeder, W. B. Dennis, Sidney Schroeder.

The opinion states the case.

No brief on file for appellant.

E. A. Berry, Assistant Attorney General and *Dougherty & Dougherty, W. W. Dodd,* and *J. C. North,* for the State.—On question of indictment: Webber v. State, 78 Texas Crim. Rep., 268, 180 S. W. Rep., 1082;

DAVIDSON, PRESIDING JUDGE.—This conviction was for forgery under Article 947, Branch's Ann. P. C., p. 882.

This article provides, as applicable to this particular indictment, that any person who in any way aids, assists, advises, or encourages the false making, altering, forging, or counterfeiting of any certificate, filed notes, returns, survey, map, plat, report, order, decree, record, patent, deed, power of attorney, transfer, assignment, release, conveyance, or title paper, or acknowledgment, or proof of record, or certificate or record belonging to or pertaining to any instrument or paper, or any seal, official or private stamp, scroll, mark, date, signature, or any paper, or any evidence of any right, title, or claim, etc., in relation to or affecting lands or any interest in lands in this State, with the intent to make money or other valuable thing thereby, or with intent to set up a claim or title, or aid or assist any one else in setting up a claim or title to lands or any interest in lands, or to prosecute or defend a suit, or aid or assist any one else in presecuting or defending a suit with respect to lands, or to cast a cloud upon the title, or in any way injure, obtain the advantage of, or prejudice the rights or interest of, the true owners of lands, or with any fraudulent intent whatever, shall be deemed guilty of forgery.

Under this article it would be necessary for the pleader to allege, as applicable to this indictment, that appellant aided, assisted, advised, or encouraged, etc., the false making of the instrument declared upon with the intent to make money or other valuable thing thereby, or with intent to do some of the things further enumerated in the article. Usually, in indictments for forgery, it is sufficient to make the general allegation that the forgery was committed with intent to injure or defraud, and it would be immaterial what the forgery or defrauding would be, or who it would defraud. But the reading of this statute deviates from that general rule, and provides specifically the intent and purposes with which the forgery, or the inhibited things may occur. It must allege one of the intents or purposes inhibited by the statute as a prerequisite to the defrauding. This would not be true under the general statute of forgery, but it is under this statute, because the Legislature saw proper to specifically enumerate the means, manner, purposes and intents by which such fraud shall or must be consummated. This has not been done in the indictment as we understand its reading. Omitting formal parts, the indictment charges appellant ''with intent to injure and defraud and without lawful authority, did aid, assist, advise and encourage the false making and forging and affixing of fictitious and pretended signatures, by some person or persons, whose names are to the grand jurors unknown, to a certain instrument, to-wit. a deed, purporting to be the act of M. T. Nix,'' and something like fifty others. Then following the deed and general specification of the land, with the habendum clause. At the end of

the signatures is the acknowledgment before W. B. Dennis, a Notary Public in and for Bexar County, Texas, which certifies that M. T. Nix, for himself, and by power of attorney in fact in and for the other named parties, naming them, "for ourselves, known to me to be the persons whose names are subscribed to the foregoing instrument, and they acknowledged to me that they executed the same for the purposes and considerations therein expressed." Then follows another clause in the indictment alleging that the signatures were fictitious and were not signed by M. T. Nix and the other named parties.

It will be noticed from the reading of the indictment that it does not specify for what purpose appellant had advised the execution of the deed, or with what intent he had this done. There is, in a general way, a statement to the effect that it was intended to convey to him an interest in the land, but there is no specific allegation such as is required by the statute. This, we, think, should have been alleged in order to comply with the legislative enactment. It may be further observed in this connection that Nix appeared before Dennis, the notary public, and there are statements in the acknowledgment to the deed that the other parties did. The acknowledgment states that Nix appeared in person and by power of attorney, and acknowledged he executed this deed for the purposes and considerations, etc., and the notary public certifies further that they were known to him to be the persons whose named were subscribed to the instrument, and he took their acknowledgment to the fact that they executed the same for the purposes and consideration therein expressed. If this acknowledgment is to be taken as a part of the indictment, and it is alleged as a part of it, then Nix was certainly not an unknown person to the grand jurors at the time and was not a fictitious person. The indictment is contradictory within itself. The allegation in the indictment would not be authorized, that some person or persons to the grand jurors unknown signed these fictitious names, when as a matter of fact the deed itself declared to be a forgery, shows upon its fact that it was executed by Nix, if not by all the other parties, as evidenced by the acknowledgment before a notary public. This leaves the indictment in an incongruous and uncertain shape, to say the least of it. If upon the hearing of the case before the jury it should have developed that Nix did in fact sign the instrument of his own will, or at the instigation of appellant, and signed his name to it, he would not be unknown to the grand jurors, and if he signed the names of the others the grand jurors had evidence before them, or could have had by reasonable diligence, that Nix signed his own and the other names to it; at least the indictment leaves it in that shape without averments covering these discrepancies. Wherever the grand jurors could know by reasonable diligence the names of the parties to this instrument and that they were not fictitious, then proof of this

upon the trial would vitiate the indictment. This has been the rule at least since Jorasco v. State, 6 Texas Crim. App., 238, and Jorasco v. State, 8 Texas Crim. App., 540.

There is one other bill of exceptions which will be noticed. It recites the testimony of several jurors to the effect that they discussed the failure of the defendant to testify on the trial. Nine of the jurors, it seems, testified, and it is agreed the absent three would have testified to the same fact had they been present. This would necessitate a reversal of the judgment.

There are many other matters arising upon this record and presented by bills of exception, but they may not occur upon another trial as here presented, and some of them can not be considered in the absence of the testimony, there being no statement of facts accompanying the transcript. Some of the matters present very interesting and serious questions, and it is to be regretted that the able counsel who defended in the trial court did not present the case before this court either by oral argument or brief, but as we understand the record the questions passed upon would be fatal to the conviction.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, absent.

ON REHEARING.

April 16, 1919.

DAVIDSON, PRESIDING JUDGE.—In a motion for rehearing the State contends that the original opinion was erroneous in holding the indictment insufficient to charge the offense therein set forth. Upon further reflection the majority of this court have reached the conclusion that that portion of the opinion was incorrect, and the further conclusion that the indictment sufficiently charges the offense. The reporter will copy the charging part of the indictment.

In accord with the views of the majority that portion of the original opinion will be modified and reformed, and the indictment held sufficient.

Upon the remaining grounds set forth for reversal, the original opinion will stand as being correct. To meet the views of the majority the original opinion is modified and reformed so as to hold the indictment sufficient.

To this extent the State's motion for rehearing is granted, and in other respects it is overruled.

*Overruled in part.*