## KELLY v. STATE. (No. 7705.)

(Court of Criminal Appeals of Texas. June 20, 1923.)

**1. Criminal law ⬅═1090(19)—Bill of exceptions unnecessary to question sufficiency of evidence.**

A bill of exceptions is unnecessary to question the sufficiency of the evidence to sustain a verdict of guilty, since the appellate court is required by statute to read the statement of facts in every case, and it must reverse if it does not believe the facts support the verdict, so that in any case it is sufficient to raise that question in a motion for new trial, and in that connection the testimony need not be set out.

**2. Intoxicating liquors ⬅═233(2)—Possession of apparatus for manufacturing is admissible to show possession of liquor for sale.**

In a prosecution for possessing intoxicating liquors for the purpose of sale, evidence that accused had in his possession apparatus and mash for manufacturing such liquors, as well as a large quantity of the liquors already manufactured, was admissible to support an inference of intent to sell.

**3. Intoxicating liquors ⬅═236(7)—Evidence held sufficient to sustain conviction for possession for sale.**

Evidence that accused had in his possession a considerable quantity of whisky with the apparatus and mash with which to make more, and the containers in which to sell it, and that he stated he was making good stuff and not putting out stuff that would poison people, *held* sufficient to sustain a conviction for unlawfully possessing for the purpose of sale.

**4. Criminal law ⬅═925½(3), 1156(5) — Court ordinarily has large discretion in denying new trial for jury's misconduct.**

When issue is joined before the trial court on the charge of misconduct by the jury in discussing the failure of accused to testify and the trial court hears the evidence of all the jurors and renders judgment thereon, he has a large discretion, which ordinarily will not be reviewed on appeal.

**5. Criminal law ⬅═857(3) — Jurors' discussion of failure of defendant to testify held to require reversal.**

Where all of the jurors testified that the failure of accused to take the stand in his behalf was discussed by them contrary to Code Cr. Proc. 1911, art. 790, the only difference among them being as to the extent of such discussion, and most of the jurors stating the purport of the discussion was that accused would have taken the stand if he were not guilty, the conviction must be reversed.

Appeal from District Court, McLennan County; Richard I. Munroe, Judge.

Cicero Kelly was convicted of possessing intoxicating liquor for the purpose of sale, and he appeals. Reversed and remanded.

W. H. Forrester and Method Pazdral, both of Waco, for appellant.

W. A. Keeling, Atty. Gen., and C. L. Stone, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted in the district court of McLennan county of possessing intoxicating liquor for the purpose of sale, and his punishment fixed at one year in the penitentiary.

[1] Appellant's bills of exception Nos. 1 and 2 complain of the lack of sufficient testimony, one being to the overruling of the motion for new trial on this ground and the other to the refusal of a peremptory instruction of acquittal. A bill of exceptions to the refusal of a new trial because of the insufficiency of the testimony, or to the refusal of a special charge for an instructed verdict for the defendant, is not necessary to bring before us a review of the testimony. We are required by our statutes to read the statement of facts in every case, and if we do not believe the facts support the verdict, it is our duty to reverse the case. In any case it is sufficient to raise this question in a motion for new trial, and it is not necessary to set out in that connection what the testimony is.

[2, 3] We have examined carefully appellant's bills of exception Nos. 3, 4, 5, and 6, and do not think they show any error. That one is found in possession of intoxicating liquor of such quantity as to raise the presumption in the minds of the jury that he has it for purposes of sale does not seem to us unreasonable. The fact that one is found in possession of the machinery with which liquor can be made, and the containers in which it is commonly sold, and the mash out of which it is made, seem provable facts when the question directly at issue is the possession for the purpose of sale. In the instant case, in addition to finding the paraphernalia mentioned, a considerable quantity of whisky was found in appellant's possession, and when he came to his premises shortly after this finding by the officers he said that he would have to be credited for one thing: He was making good stuff; he was not putting out stuff that would poison and kill people. We observe the various parts of the still were disconnected and some of them buried underground. The barrels of mash were under the floor. We would not hold evidence of these

facts inadmissible nor that the evidence was not sufficient to support the conviction.

[4, 5] The law gives to the accused the right to testify, article 790, O. C. P., but provides that his failure to do so shall not be taken as a circumstance against him, nor shall it be alluded to or commented on by counsel in the cause, and many cases are cited under article 843 of Mr. Vernon's C. C. P. wherein this court has reversed cases for violation of this statute. Our books are full of cases also where the jury discussed the failure of the accused to testify, and this has been held to require reversal. Such misconduct was set up in the instant case. The affidavits of certain jurors were appended to the motion for new trial. Issue was joined on the matter and the court heard evidence upon the presentation of the motion. All the jurors who sat in the case testified. We quote parts of their testimony. We also recognize that when issue is joined before the trial court in 'matters of this kind and he hears the evidence and renders judgment, he has large discretion which ordinarily will not be reviewed by us, but in this case there seems no dispute of the fact that the failure of the accused to testify was discussed; the only question being as to how much it was discussed. The quotations speak for themselves. Juror Newman testified that after the jury had been to lunch and came back some one said that if appellant had not been guilty he would have gotten on the stand and testified in his own behalf. Somebody replied to that; there was some discussion. There was more or less discussion among the jury. This juror further stated in regard to this matter:

"It was in my mind, and after they said what they did I could not get it out of my mind."

Juror Zeigler testified:

"In the course of that discussion there was some discussion in the jury room among the jurors on the question of the defendant not taking the stand and testifying in his own behalf. Some of them said, 'Why didn't he take the stand for himself?' The jury discussed the matter about the three barrels of mash that the officers found concealed in the yard, and one remarked, 'Well, why didn't he get on the stand and say that mash was for his hogs?' I said in a kind of a laughing way, 'Well, maybe he can't talk, I don't know'—in a laughing way, you know, joking way. I heard some discussion to the effect that he must be guilty or he would have taken the witness stand."

Juror Hatter testified:

"I don't know whether you would call it a discussion or not. They said it looked like if he was not guilty he would have got up in his own behalf and testified in his own behalf. I won't be positive about it, but it seemed like there was something said about it looked like he would have a witness or testify himself that there was no sale made."

Juror Moran testified:

"The matter must have come up in the afternoon about the defendant not testifying. We discussed the case for four or five hours. It was along in the neighborhood of 5 o'clock when we reached a verdict. My recollection is that two or three times during that time some of them said something about him not taking the stand, but it was not discussed. They did bring it up and say something about it."

Juror Hobbs testified:

"I don't remember how often the fact was referred to that the defendant did not testify. I don't remember what was said on that point; there was a heap of times they were all just talking, and somebody brought that up, and I could not recall who said it. When it was brought up I don't think I engaged in any argument or discussion of it. I might have said that he did not take the witness stand, but I did not discuss it. I don't know how come me to say that. I have been on juries once or twice before. I don't know who first mentioned that matter in the jury room. I don't know how often I brought it up. I don't know whether I brought it up more than once or not. I guess I did say it once, I don't know how many times. * * * I guess there was something said in the argument to the effect that it looked like if he wasn't guilty he would have got on the stand and swore those three barrels of mash were for his hogs; I don't know. We were discussing whether he had it for the purpose of sale and he ought to say something about that."

Juror Jasper testified:

"I think the fact was mentioned in the jury room that the defendant did not take the witness stand; I don't think it was discussed, however, but it seems like I heard it mentioned. * * * I heard it mentioned some two or three times—just mentioned. It seems like in one instance one man says, 'Well, it looks like he was guilty or he would have taken the stand.' * * * I remember hearing the statement that it looked like if he was not guilty he would have taken the stand and sworn that mash was for his hogs."

Juror Sparks testified; said that some one might have mentioned appellant's failure to testify in the jury room.

Juror Redding testified:

"It seems to me that it was mentioned that Cicero Kelly did not take the witness stand. I could not say who mentioned it; some fellow mentioned something about he did not take the stand, and at that time the foreman, I believe, and some one else, told us we were instructed not to consider that part."

Juror Summerlin testified:

"I remember in one instance that some fellow referred to the fact that he did not take the stand, and some one else in the bunch said, 'We are not to consider that.' I never heard it any more. * * * I did hear it mentioned one time. It looked like if the defendant was not guilty he would have got on the stand and testified in his own behalf, is about what was

said, and the fellow probably would have said more, I don't know, but some fellow spoke up."

Juror Nehring testified:

"When reference was made of the fact that Mr. Kelly did not take the stand and testify in his own behalf, there were several men said that he overruled that, and we dropped it right away. There was several talked about it before that, to my best recollection now; but when they were reminded that the court had instructed them not consider that, they immediately dropped it. * * * The man who talked about Mr. Kelly not taking the stand, and he must be guilty or he would have taken the stand, was a man, my best recollection, who voted not guilty."

Juror Yarbrough testified:

"It seems to me there was some mention made in the jury room of the fact that the defendant did not take the witness stand. It was not discussed very much. * * * I don't know who it was that brought it up. I could not say that what was said was that it looked like the defendant, if he had not been guilty, would have got on the stand and testified in his own behalf; they mentioned his not testifying, but I did not pay but very little attention to it."

Juror Baker testified:

"Some one in there said when it was brought up that it looked like if the defendant had not been guilty he would have got on the stand and testified in his own behalf—something like that, sort of in that way."

Many cases have been reversed for less discussion on the part of jurors. Roberts v. State, 85 Tex. Cr. R. 196, 211 S. W. 219; Richards v. State, 59 Tex. Cr. R. 203, 127 S. W. 823; Walling v. State, 59 Tex. Cr. R. 279; 128 S. W. 624; Jones v. State, 72 Tex. Cr. R. 496, 162 S. W. 1142; Clark v. State, 76 Tex. Cr. R. 645, 177 S. W. 84; Boozer v. State, 82 Tex. Cr. R. 72, 198 S. W. 295; Haynes v. State, 84 Tex. Cr. R. 6, 204 S. W. 430; Kilpatrick v. State, 85 Tex. Cr. R. 172, 211 S. W. 230; Barrow v. State, 88 Tex. Cr. R. 82, 225 S. W. 53; Glenn v. State, 89 Tex. Cr. R. 13, 229 S. W. 521.

For the error mentioned the judgment will be reversed and the cause remanded.