HESS TYLER v. THE STATE.

No. 13807.   Delivered June 3, 1931.

The opinion states the case.

*W. A. McIntosh,* of Gilmer, and *J. M. Elliott.* of Memphis, for appellant.

*Hamilton, Fitzgerald & Grundy,* of Memphis, *James C. Mahan,* District Attorney, of Wellington, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder; punishment being assessed at death.

The prosecution grew out of the killing of a young man by the name of Bryan Nall who resisted an attempted robbery.   Because of the necessary disposition of the appeal a detailed statement of the facts is not called for.

Issue was joined upon a motion by appellant for change of venue and evidence heard thereon.   It does not appear therefore that the court abused his discretion in denying the motion.

Many other questions are presented which will not occur on another trial and a discussion of them is pretermitted.

It is made to appear by bills of exception 5 and 7 that after the special venire had been exhausted the trial court directed the clerk to draw from the box containing the list of remaining jurors fifteen additional names, and place them on the venire list.   He then directed the sheriff to summon these men from whom the jury was completed.   Appel-

lant objected to this procedure on the ground, among others, that the talesman were not selected in accordance with the law. Article 596, C. C. P. (1925), reads as follows: "On failure from any cause to select a jury from those summoned upon the special venire, the court shall order the sheriff to summon any number of men that it may deem advisable, for the formation of the jury."

It is appellant's position that the discretion is vested in the sheriff as to the selection of talesmen, and that the court was acting without authority to proceed in the manner shown in securing additional prospective jurors. For a time after the Legislature provided for drawing additional special venire lists (see article 593, C. C. P.) our court was in some confusion in regard to the proper manner of selecting talesmen after the venire panel had been exhausted. This is evidenced by the opinion in Keith v. State, 50 Texas Crim. Rep., 63, 94 S. W., 1044, which was followed in the original opinion in Mays v. State, 50 Texas Crim. Rep., 165, 96 S. W., 329. Upon rehearing the original opinion in Mays' case (supra) was changed. See Mays v. State, 50 Texas Crim. Rep., 165, 96 S. W., 329. The Keith case was in effect overruled. The final holding was that the provision now found in article 593, C. C. P., regarding additional special venire lists did not affect the manner of selecting talesmen when the venire drawn in the case had been exhausted, but that article 596, C. C. P., directed the manner of selecting talesmen, which is by the sheriff. Williams v. State, 60 Texas Crim. Rep., 453, 132 S. W., 345. Since that time it has been held that it was not error for the court to refuse defendant's request to have the talesmen selected other than by the sheriff. Bennett v. State, 95 Texas Crim. Rep., 70, 252 S. W., 790; Russell v. State, 209 S. W., 671. See also Riley v. State, 81 S. W., 711. If it is not error to refuse accused's request to ignore article 596, C. C. P., in selecting talesmen, it is hard to combat appellant's position that it is error to ignore said article over appellant's protest. We do not discuss the matter further as the suggestions already made will prevent a recurrence of the matter upon which the complaint is predicated.

One ground of the motion for new trial was based on an averment that the jury discussed the failure of appellant to testify and considered that fact against him. Upon a hearing of the motion six jurors testified. It developed that soon after the jury retired they agreed upon the question of guilt, but it was some eighteen or twenty hours later before the death penalty was agreed on. The reference to appellant's failure to testify was after the agreement as to his guilt had been determined.

Mr. Stout, one of the jurors, testified that someone referred to appellant's failure to testify. He said: "I think it was a kind of general discussion. * * * I made the remark that it was not permissible to discuss that, and Mr. Wolfe who was foreman of the jury said the judge had not instructed them not to discuss it. * * * This matter was in open dis-

cussion there. Somebody mentioned it and I said, 'I don't think we ought to discuss it;' and then Mr. Wolfe said the court had not charged on it and he thought maybe we could discuss it. As far as I know it wasn't mentioned after that. * * * I don't believe the expression was used 'If the defendant wasn't guilty why didn't he go on the stand and say so,' the burden was put on the attorneys as to why they didn't put him on the stand, and someone said, 'If he wasn't guilty why didn't they put him on the stand and let him testify.' We were all around the table discussing the merits and demerits of the case when this discussion came up, and someone said, 'I don't know why they didn't put the defendant on the stand and let him testify himself.' "

Mr. Stringer, another juror, testified: "The matter was brought up two or three times in regard to the defendant not going on the stand as a witness. I think it was remarked about pretty generally. * * * From the discussion I rather think some of them considered that perhaps he was afraid to take the stand, and I made the remark that I would have been glad if he had gone on the stand so I could have studied the slant of his mind. This matter was brought up two or three times, all different ones. I don't remember who they were."

Mr. Rothfus, another juror, testified that he was the juror who was holding out on the question of the penalty, and that he heard a discussion among some of the jurors about appellant not having taken the stand in his own behalf. This juror said he was up in the bedroom at the time and that the discussion was among the jurors who were downstairs; that he heard it mentioned a time or two. Mr. Slover, another juror, said he heard someone say something about the defendant not having testified in his own behalf; he said he did not recollect distinctly that this was referred to but one time. "The words that I remember hearing and the only one that I can swear to was 'If he wasn't guilty, why didn't he go on the stand and say so.' "

The four jurors mentioned were used by appellant upon the hearing of the motion; the state used two jurors, Messrs. Russell and Lamb. The extent of their testimony was that during the deliberations of the jurors they did not hear any discussion of defendant's failure to testify. Mr. Lamb would not say there was no such discussion, but said he did not hear any and if any occurred he did not remember it.

Article 710, C. C. P. (1925) provides: "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause, * * *"

The great number of reversals because of a violation of this statute illustrates very clearly the futile efforts of legislation to control the workings of the human mind. In the present instance there may have been

no ."general discussion" among the jurors of the fact that appellant did not testify in the sense that all the jurors were engaged in the discussion, but it is perfectly apparent from the evidence heard that some of the jurors were discussing as a circumstance against appellant the fact that he had not taken the witness stand, the very thing the statute forbids. They seem not only to have discussed it, but also considered the question as to whether it was not proper for them to do so under the circumstances. It may be regretted that reversals are frequently called for under the terms of the statute, but as long as it remains the law this court may not ignore it, but is under the solemn duty to enforce it. The violation of the statute by the jury seems to be a matter the trial courts have little control over, as it is a natural and unconscious rebellion of the juror's mind against the terms imposed by the statute. It is unnecessary to cite many authorities; they will be found collated in note 40, under article 710, Vernon's Tex. C. C. P., vol. 2, among them being Thorpe v. State, 40 Texas Crim. Rep., 346, 50 S. W., 383; and Haynes v. State, 84 Texas Crim. Rep., 6, 204 S. W., 430.

The judgment must be reversed and the cause remanded.

*Reversed and remanded.*